[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE POST JUDGMENT MODIFICATION OF SUPPORT BASED IN PART UPON LOTTERY WINNINGS
In November, 1987, after the parties had begun an action to dissolve their marriage and after the defendant had been removed from residence in the marital home in Shelton, Connecticut, defendant Gerald Murphy purchased a ticket in the Connecticut State Lottery "Lotto" game. The defendant's ticket was picked as the weekly game's winner, entitling him to a prize of two million five hundred thousand ($2,500,000.00) dollars. The defendant did not immediately turn in his winning ticket to Connecticut State Lottery officials in November 1987. Under the rules of the Connecticut State Lottery, lottery game winners have twelve months to claim their winnings from the State's Division of Special Revenue.
On July 27, 1988, a hearing was scheduled in this court to adjudicate contested matters in the dissolution action between the parties. Immediately prior to the hearing, the defendant informed the plaintiff of his winning the Connecticut Lotto game eight months earlier, in November 1987. The defendant has chosen to wait until July 1988 to submit his winning ticket to lottery officials, and his winnings were made distributable to him on July 28, 1988.[1]
At the July 27, 1988 dissolution hearing, the court heard evidence regarding the income and assets of the parties, their employment histories and earning potential, and the child support needs of the parties' child, Melissa J. Murphy, who was nearly 9 years old at that time. The court also heard evidence on the distribution of financial and property assets agreed to by the parties. On August 1, 1988, the court (O'Sullivan, J.) CT Page 10920 issued a memorandum of decision which ordered the defendant to pay weekly child support to the plaintiff in the amount of one-hundred and twenty-five ($125.00) dollars per week.
By Motion for Modification of Support by Citation, dated November 1, 1990, and filed on November 19, 1990, the plaintiff seeks to increase the amount of the child support order by alleging in this written motion only that ". . . there has been a substantial change of circumstances in the defendant's financial condition."
On August 29, 1991, the plaintiff filed a separate Motion for modification, dated August 28, 1991 in which she asserts 1) that since the date of dissolution there has been a substantial change of circumstances, and 2) that since the child support guidelines became effective subsequent to the original child support order, she claims any substantial deviation from the child support guidelines as a change in circumstances. In the August 28, 1991 motion the plaintiff seeks costs as well as counsel fees, and notes the defendant's agreement to her filing the same without prejudice to the court's consideration of the modification motion dated November 1, 1990.
At a short calendar non-evidentiary argument at the Superior Court in Milford and at the October 1991 evidentiary hearing of this matter in this Superior Court at Hartford the plaintiff claimed that the defendant has experienced this "substantial change in circumstances" as a result of his winning the Connecticut State Lottery in November 1987, and the plaintiff argued verbally that given the defendant's present weekly income, the current child support payments "substantially deviate" from the Connecticut Child Support Guidelines and permit the court to modify the support order pursuant to Conn. Gen. Stat. 46b-86. Thus, the plaintiff seeks an increase in child support payments for the parties' daughter Melissa J. Murphy, and further seeks to have the defendant pay adjusted child support payments retroactive to the date of service of the November 1, 1990 original motion for modification.
The defendant objects to the plaintiff's original claim of a "substantial change" in his financial circumstances. He claims that he disclosed his lottery winnings to the plaintiff and the Court on July 27, 1988, well before the August 1, 1988 child support order had been entered. The defendant also objects to judicial consideration of plaintiff's claim that the current child support order "substantially deviates" from the Child Support Guidelines (which were statutorily adopted after the August 1, 1988 child support order) for the reason that the plaintiff did not raise guideline deviation in her November 1, 1990 written motion for modification. CT Page 10921
The law Which governs this court's ability to modify an order for child support states, in relevant part:
 Unless and to the extent that the decree precludes modification, any final order for the payment of permanent alimony or support . . . may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines established pursuant to section 46b-215a . . .
Conn. Gen. Stat. 46b-86 (a).
In the instant case, the plaintiff claims in her November 1990 motion for modification that since this court entered its original support order in August 1988, "there has been a substantial change of circumstances in the defendant's financial condition." The plaintiff compares the defendant's financial affidavits from July 1988 and October 1991 and notes that his reported weekly net income has increased from $237.83 in 1988 to $1,872.17 in 1991. The plaintiff also notes that the defendant's reported cash assets fell from $797,079.768 in 1988 to $172,050.00 in 1991. (Plaintiff's memorandum of Law in Support of the motion for modification, August 27, 1991, p. 8.) The principal distinction between the defendant's 1988 and 1991 affidavits is that the defendant reported his lottery winnings as an asset item with a present-day value of $713,010.95 in 1988, while in 1991, he reported his lottery winnings as weekly income item with a net value of $1,755.25.[2]
In the present case, the defendant's financial circumstances do not appear to have substantially changed since this court entered its child support orders on August 1, 1988. The defendant informed the plaintiff and the court of his winning of the November 1987 Connecticut Lotto game on July 27, 1988. The transcript of the hearing held in this court on that day indicates that both the plaintiff and the court were made aware of the scope of the defendant's lottery prize. The transcript reads:
 MS. TEITELL[3] . . . . I think that we should inform the Court as to why we are going to proceed on stipulation No. 2.
THE COURT: All right. CT Page 10922
 MS. TEITELL: We have just been informed this morning that the defendant has won $2,000,000 in the lottery. And because of that, we could not agree to the original amount as set forth in the stipulation. We are asking that Your Honor make a ruling on the amount of child support.
THE COURT: God Bless you.
MR. MURPHY: Thank you.
 MR. COHEN: Thank you, Your Honor. We were hoping Your Honor might have that —
 THE COURT: I congratulate you. That's the first time I have encountered anybody that's won any substantial amount of money in the lottery . . . I see what the problem is. All right, go ahead.
* * *
 THE COURT: . . . Now, Ms. Teitell, what do you think this all adds up to as far as you are concerned?
 MS. TEITELL: Your Honor, what he was previously making, aside the fact that he was the winner of $2,000,000, would show he has the capacity and the ability to support his child better. We believe that making $125,000 per year for the next 20 years, which is absolute, without his ever working at any other position, that's a guaranteed income, that he has the ability and obligation to support his child."
Hearing Transcript, July 27, 1988, O'Sullivan, J., pp. 8-9, 25. The transcript shows that the court was aware of the size of the defendant's prize, and the manner in which it would be paid out over the next two decades when it set the child support at $125.00 per week on August 1, 1988. The principal change lies not in the defendant's overall financial position, but in the accounting methods used to report his $125,000 in annual prize payments from the state. On these facts, the defendant's financial position has not changed substantially since August 1, 1988. Then, as now, the defendant has received and will receive $125,000 per year in prize winnings from the state, until the year 2008, as the court recognized when it entered its order.
Although the defendant's financial circumstances have not CT Page 10923 substantially changed, the court must examine two other statutorily mandated areas, namely: 1) whether there is a substantial change of circumstances of either party i.e. the plaintiff and 2) whether the August 1988 child support order substantially deviates from the child support guidelines established pursuant to Connecticut General Statutes Section 46b-215a.
The court finds that there has been a substantial change in the plaintiff's circumstances since the entry of the August 1, 1988 order of support. Factoring the August 1, 1988 order of child support into the income section of plaintiff's July 27, 1988 financial affidavit, the court finds plaintiff's then income to have been $429.73 per week. Discounting as twice included the expense for orthodontic care, and removing the life insurance payment for her son, plaintiff's 1988 weekly expenses which she listed as being paid were $565.93, and, accordingly, her income was approximately 75.9 per cent of her expenses.[4]
Based upon plaintiff's August 22, 1991 financial affidavit and her testimony at the October 1991 hearing, the court finds that her weekly expenses are at least $740.00. The court further finds that the plaintiff was laid off from work on July 1, 1991 and receives the following weekly income: $232 as unemployment compensation; $50 as rent; $125 as child support; and expects to receive $30 from commissions on the sale of Avon products, for a total weekly income of $437. This income is only 59 per cent of plaintiff's weekly expenses.
Although the plaintiff's income increased incrementally over time, her expenses increased substantially.
Concededly the defendant purchases items for Melissa from time to time, and she spends numerous weekends with him; however, the primary responsibility for the child's day to day rearing rests with the plaintiff. Moreover, the court finds that the plaintiff's custodial expenses and the needs of the minor child — who turned age 12 on September 15, 1991 — have increased significantly.
Next, the court must consider whether there is substantial support order deviation from the child support guidelines.
Connecticut General Statutes Section 46b-215b(b) requires that "[i]n any proceeding for the establishment or modification of a child support award, the child support guidelines shall be considered in addition to and not in lieu of the criteria for such awards established in sections 46b-84, 46b-86 . . . ." The child support guidelines state in significant part that
Economic data Shows that as children get older the CT Page 10924 percentage of family income spent on them increases sufficiently to warrant different schedules for the two ago groups, 0-11 and 12-15 years . . .[5]
By authority of Connecticut General Statutes Section 46b-86, as amended by Public Act 91-76, 1, a deviation in amount of an existing support order by fifteen per cent or more less than the amount set out in the guidelines creates a rebuttable presumption of a substantial guideline deviation for the purpose of modifying the existing support order. It is apparent from a review of the child support guidelines in conjunction with the current $125.00 weekly order of support that there is much more than the 15 percent deviation referred to in the statute.
Connecticut General Statutes 46b-86, as amended, authorizes modification irrespective of the date upon which the existing child support order was issued. See Turner v. Turner, 219 Conn. 703, 719 (1991).
The court next must consider whether since the plaintiff did not raise application of the child support guidelines in her November 1, 1990 written motion for modification she is precluded from raising their application to that motion.
In the plaintiff's original motion for modification of November 1, 1990, the only issue presented is that of the defendant's alleged change in financial circumstances. In this original motion the plaintiff did not raise the issue of application of Connecticut's Child Support Guidelines, which were effective October 1, 1989. Conn. Gen. Stat. Sec. 46b-215P.A. 89-203. The defendant claims that while the plaintiff raises application of the Child Support Guidelines at the August 23, 1991 hearing before this court, her failure to do so in her I original motion of November 1, 1990 precludes this court from addressing the issue unless and until she amends her written motion. The defendant cites two cases, Connolly v. Connolly,19 Conn. 468 (1983); and Strohmeyer v. Strohmeyer, 183 Conn. 35, (1981) as support for his claim that the issue cannot be raised properly unless it is included within the original motion for modification.
The court, however, must distinguish these cases from the instant case as the former involved a court's termination of alimony payments without statutorily-required notice, and the latter involved a court's change of its custody order after hearing but without prior notice of such change and a further hearing thereon. In the present case, where the plaintiff seeks a modification of child support orders under Conn. Gen. Stat. Sec. 46b-86 (a), unlike the statutorily mandated written notice CT Page 10925 requirement of Sec. 46b-86(b)[6], there is no statutory requirement to provide initial written notice of the specific statutory grounds of modification.
In Winnick v. Winnick, 153 Conn. 294 (1965), the defendant appeared in response to a contempt motion at which time neither the plaintiff nor her counsel appeared. The trial court terminated support payments without nearing evidence from the plaintiff. The Supreme Court reversed the trial court's action, excepting from Ackerman v. Union New Haven Trust Co. the quotation that
 It is the settled rule of this jurisdiction . . . that no court will proceed to the adjudication of a matter involving conflicting rights and interests, until all persons directly concerned in the event have been actually or constructively notified of the pendency or the proceeding, and given reasonable opportunity to appear and be heard.
Id. at 298.
Furthermore, Winnick, supra, quotes Osterlund v. State,129 Conn. 591, 596, for the following key proposition:
It is fundamental in proper judicial administration that no matter shall be decided unless the parties have fair notice that it will be presented in sufficient time to prepare themselves upon the issue. Id. at 298-299.
The foregoing standards of providing notice and allowing an opportunity to prepare and be heard were met in this case. Although the plaintiff's November 1, 1990 motion for modification, served on the defendant on December 2, 1990, did not refer to the child support guidelines, plaintiff verbally made clear to the defendant at an August 1991 non-evidentiary hearing that one of the bases of her argument for modification included the child support guidelines — an argument which she repeated at the October 1991 evidentiary hearing of this motion Thus, the defendant had ample fundamental due process notice of and an opportunity to defend against the applicability of the child support guidelines to plaintiff's November 1, 1990 motion for modification.
The August 1991 Motion for Modification
As stated earlier, the plaintiff filed a motion for. modification, dated August 28, 1991 and served the same upon the defendant. Filed on August 29, 1991, prior to the October 1991 CT Page 10926 evidentiary hearing, this motion seeks modification of the $125 weekly child support order based upon a substantial change of circumstances and upon a claimed substantial deviation from the child support guidelines. For the reasons stated supra, in discussing these claims, the court finds both grounds to have been established by the plaintiff.
The Amount of the New Support Order
In determining the amount of the child support order, the court must consider, inter alia, the needs of the child, as we as the respective abilities of the parties. Conn. Gen. Stat.46b-84, 46b-86. These considerations are present even in the face of child support guideline deviation. Conn. Gen. Stat.46b-215b(b).
In this case, the income of the defendant alone exceeds the $1,500.00 family income level of the child support guidelines. In this reguard, part (b)(2) of the guidelines states the following:
 . . . the guidelines do not apply where the combined net weekly family income exceeds $1,500. However, where such income exists, the amount of support prescribed at the $1,500 level is the minimum presumptive level.
Connecticut Child Support Guidelines, p. 9 (emphasis added)
According to the guidelines, the minimum presumptive level in this case is $364.00. However, after reviewing the criteria set forth in the relevant statutes, including the paramount needs of the child the court finds that the strict application of the dollar figures in the guidelines is inappropriate in this case. The court finds that the appropriate amount of child support which is to be paid by defendant Gerald Murphy is $275.00 per week.
Retroactivity of Child Support Order
Although the court is authorized to award child support retroactive to November 15, 1990 — the date on which the original modification motion was served — the court finds it equitable to limit the retroactivity of the foregoing child support order to July 8, 1991.
So ordered.
CLARENCE J. JONES, J. CT Page 10927