## Barbara North *v.* Richard North

Cotter, C. J., Bogdanski, Peters, Healey and Parskey, Js.

Argued November 6, 1980—decision released January 27, 1981

*F. Woodward Lewis, Jr.,* with whom, on the brief, was *Ellen L. Sostman,* for the appellant (defendant).

*William F. Gallagher,* with whom, on the brief, was *Elizabeth A. Dorsey,* for the appellee (plaintiff).

Bogdanski, J. The matter which gave rise to this appeal was assigned for a hearing on Friday, March 11, 1977. Before any hearing was held, however, counsel for the parties recited an agreement to the court, contingent upon the husband's ability

to arrange the necessary financing, and the matter was continued to Thursday, March 17, 1977. On Monday, March 14, 1977, counsel informed the court that the plaintiff wife had changed her mind about the recited agreement. No further action was taken until the matter was tried before a trial referee who, on April 25, 1979, rendered a judgment dissolving the marriage and ordering the division of the parties' joint assets and obligations. From that judgment the defendant husband has appealed claiming that the agreement of March 11, 1977, was binding upon the parties, and that the court erred in assigning an interest in his real and personal property to the wife.

The parties were married on October 1, 1960, in Woburn, Massachusetts, but resided in Connecticut throughout most of the marriage. Three minor children were born of the marriage, one of whom died during infancy. Neither party had any assets at the time of the marriage. The husband subsequently became co-owner of his family's insurance agency receiving, in 1979, a net salary of $300 per week. The wife sold Avon products from 1963 through 1970. She also began working for the North Insurance Agency in 1969, receiving a net salary of $160 per week, and continued working there until 1975. In 1979 she had net wages of $200 per week from employment elsewhere. The parties jointly owned real estate in Guilford which they purchased in 1964 from the husband's parents. Through years of effort and expense, the property was converted from a summer cottage to a year-round home. At the time of the dissolution, however, additional repairs were necessary to install an entirely new water main system which was estimated to cost approximately $14,000.

There was evidence that in 1968, and thereafter, the husband was seldom home; that the wife carried on at home as best as she could, receiving little money from the husband, and becoming emotionally depressed. There were episodes of physical and verbal abuse by the husband; the wife became anxious, gained weight, cried a great deal and, in 1972, she began seeing a psychiatrist. In 1972, the husband took a trip to Switzerland and on his return showed her a photograph of himself and another woman and told all their friends about this woman.

The husband maintains that the trial referee erred in declining to make a determination whether the agreement recited in 1977 was "fair and equitable" before proceeding in the matter.

Section 46b-66 of the General Statutes provides that where the parties have submitted an agreement concerning custody and support of children or alimony or the disposition of property, the court shall determine whether the agreement is fair and equitable, and if so, it shall become a part of the court file, but if the agreement is found not to be fair and equitable, the court shall make such orders as to finances or custody as the circumstances require.

In his memorandum of decision the trial referee stated that he carefully studied the transcript of March 11, 1977, and concluded that he could not agree with the husband's contention that it was a completed agreement.[1]   This was presumably, in

[1] "Mr. Engelman [for the husband]:   We should perhaps state for the record, your Honor, that all of this is contingent upon Mr. North being able to arrange approximately $29,000 of financing to enable him to discharge the obligations that he would be undertaking under the terms of this agreement.

"The Court:   All right.   Fine, gentlemen.   What I will do then is continue the matter until 2:00 p.m. next Thursday, the 17th."

part, because the property settlement was contingent upon the husband obtaining financing. A contract which is subject to a financing contingency may still be a valid contract. See *Faloutico* v. *Maher,* 182 Conn. 448, 438 A.2d 710 (1980); *Ravitch* v. *Stollman Poultry Farms, Inc.,* 165 Conn. 135, 328 A.2d 711 (1973); *Luttinger* v. *Rosen,* 164 Conn. 45, 316 A.2d 757 (1972). An agreement may be binding between the parties even before the court has examined it pursuant to § 46b-66. 24 Am. Jur. 2d, Divorce and Separation § 899. To hold otherwise is to take away the certainty necessary if parties to a marriage dissolution are to enter into a bargaining process and attempt to work out their own solutions. In the final analysis, the court must still determine that the agreement is fair and equitable.

In this case, however, the transcript of proceedings shows that the parties had not reached an agreement on March 11.[2] The issue of intent to agree is a question of fact for the trial court. *Lar-Rob Bus Corporation* v. *Fairfield,* 170 Conn. 397, 403, 365 A.2d 1086 (1976).

The husband next claims that the judgment as to property and alimony awards resulted in an indirect assignment of his inheritance to his wife contrary to law. He argues that such an assignment is contrary to § 46b-36 which provides that "[n]either husband nor wife shall acquire by the marriage any right to or interest in any property held by the other before or acquired after such marriage, except as to the share of the survivor in the property as provided by section 45-273a."

---

[2] At the March 11 hearing, counsel for the husband stated, "I have agreed, your Honor, that he will pay $100 this week. And by Thursday we will know *whether or not we have an agreement* and this can be considered the first payment under the order at that time." (Emphasis added.)

The husband overlooks § 46b-81 (a) which provides that the court may assign to either the husband or wife all or any part of the real or personal estate of the other when in the judgment of the court it is the proper mode to carry the decree into effect. The trial referee found the value of the real estate to be $90,000 with an equity of $30,000. He ordered that the husband transfer his interest in the jointly owned marital home to the wife, subject to the first mortgage. This interest was clearly assignable under the statute.

The trial referee ordered certain joint liabilities of the parties to become liabilities only of the husband. In order to discharge these liabilities, the defendant may be required to use part of the property he inherited after his mother's death. In *Schmidt* v. *Schmidt,* 180 Conn. 184, 191–92, 429 A.2d 470 (1980), this court stated, "[w]hile there is no express provision in General Statutes § 46b-81 authorizing a court to order that sole liability for the debts of the parties be imposed upon one of the parties, § 46b-81 confers broad powers upon the court in the assignment of property. It provides, in part, that the court 'may assign to either the husband or wife all or any part of the estate of the other.' Among the factors to be considered in any order entered under § 46b-81 are the 'estate, liabilities and needs of each of the parties.' . . . In this context, the 'estate' of the parties, as referred to in the statute, comprehends the aggregate of the property and liabilities of each." This includes any property a party may have received by reason of inheritance.

Although a party may have received property through inheritance, assigning such property to the

other spouse does not violate § 46b-36. An award of alimony has never been based upon any pre-existing right of one spouse in the property of another. *Hodge* v. *Hodge,* 178 Conn. 308, 314, 422 A.2d 280 (1979). Under the present statute, an alimony award is based upon the circumstances of the parties and is within the sound discretion of the court, taking into account the criteria set forth in § 46b-82.[3] *Fucci* v. *Fucci,* 179 Conn. 174, 181, 425 A.2d 592 (1979); *Chambliss* v. *Chambliss,* 171 Conn. 278, 279, 370 A.2d 924 (1976).

The husband contests the award of counsel fees. Counsel fees also call for the exercise of judicial discretion. *El Idrissi* v. *El Idrissi,* 173 Conn. 295, 301–302, 377 A.2d 330 (1977). Section 46b-62 provides that reasonable attorney's fees may be awarded to either party in accordance with their respective financial abilities and the criteria set forth in § 46b-82. *Fricke* v. *Fricke,* 174 Conn. 602, 603, 392 A.2d 473 (1978).

The basic question remaining is whether the trial referee abused his discretion in ordering the awards. In determining whether the trial court abused its discretion "the ultimate issue is whether the court could reasonably conclude as it did." *Fucci* v. *Fucci,* supra, 181, quoting *Aguire* v. *Aguire,* 171 Conn. 312, 314, 370 A.2d 948 (1976). We con-

---

[3] General Statutes § 46b-82 provides that in determining alimony "the court shall hear the witnesses . . . , shall consider the length of the marriage, the causes for the . . . legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties . . . , and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

clude that the trial referee took into account the elements required by the relevant statutes and did not err in his awards.

There is no error.

In this opinion the other judges concurred.