[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife commenced this action for a dissolution of the parties' marriage on the ground of irretrievable breakdown, by complaint returnable to this court on July 12, 1994. She also seeks custody and support of the parties' minor child, alimony, and other relief, as on file. The defendant husband's amended answer admits all of the allegations of the complaint. In his amended cross complaint, he also seeks a dissolution of the marriage, joint legal custody of the minor child, and other relief as on file.
Each spouse was represented by counsel throughout the proceedings. An attorney was appointed for the child pendente lite as issues arose relating to custody and visitation. The parties were ordered to, and did, successfully complete the Parenting Education Program. See General Statutes § 46b-69b.
At trial, the parties testified and submitted financial affidavits, child support guidelines worksheets and written proposed orders. Other witnesses were called and a number of documentary materials were introduced into evidence. The child's attorney cross-examined witnesses, and submitted written proposed orders. All counsel made oral argument.
From the evidence, I find as follows.
The couple was married on October 3, 1987, at Portland, Connecticut. The wife's birth name was Hobart. She has resided continuously in this state for at least one year before the filing of the complaint, June 29, 1994. They have one minor child, issue of the marriage, Bryan J. Lynch, born February 11, 1991. No other minor children were born to the wife during the marriage. Neither party, nor the child, are CT Page 12169 recipients of public assistance; all statutory stays have expired and this court has jurisdiction.
The plaintiff wife is 31 years of age, in good health, and is a high school graduate with two years of college. She has been employed since the summer of 1994 as a bookkeeper for a local law firm. She earns $420 per week gross and $322[1] per week net. She has health insurance benefits and a 401K plan, not yet vested, through her employment, to which she contributes. She has worked full time throughout the marriage in bookkeeping positions, with the exception of a brief period after the birth of the parties' son. During her career, her maximum earnings were $26,909 per annum (1990). She has significant vocational skills.
The defendant husband is also 31 years of age and in good health. He is a high school graduate and presently works as `acting' supervisor for the Town of Portland sewage treatment department. Before his recent promotion, he was employed by the department as a mechanic/electrician. In all, he has worked for the town for the past nine years. He earns $770 per week gross, $520 per week net. This includes some regular, recurring overtime, which he expects to be reduced somewhat in the future. He is a union member and has pension and health insurance benefits. He has been intensively involved in the local volunteer fire department for the past 15 years, during which he rose to the rank of lieutenant. He is a certified fire instructor. He also serves as an emergency medical technician (EMT), for which he receives no income. A good part of his leisure time is devoted to his avocation, related social events and athletics.
The parties have agreed that their marriage is destroyed, and has irretrievably broken down. They agree on little else, and a great many issues in this case have been vigorously litigated at substantial expense to them, which is financially destructive. The wife claims that the cause of the marriage destruction was the husband's outside activities, which kept him away from the home several nights a week and other times. She also claimed that he drank often to excess.
The husband claims that she unduly criticized him, especially about his care of the child, often in the presence of others. Each accuses the other of extramarital relationships, as contributing to the marriage breakdown, but I find CT Page 12170 insufficient probative evidence of these assertions. The parties separated in June, 1994, when the wife moved from the family dwelling in Portland to Mystic, where she resides with her child in her parents' home. The parties did little to attempt repair of the marriage. On the issue of the breakdown of the parties' marriage, I find that each much bear responsibility for its disintegration, and it would serve no useful purpose to more precisely determine each spouse's share.
The husband was permitted to amend his cross complaint to seek an order of joint legal custody. Although as noted, the parties promptly participated in and successfully completed the Parenting Education Program, neither sought a referral to Family Services for mediation or evaluation of custody and visitation disputes or related issues. Nor did the child's attorney.
Both parents are intelligent and articulate and are capable of suitably parenting their son, who is bright and active. I have no doubt that each parent genuinely loves and cares for him. Both have much to offer the child to foster his emotional growth and development, and his well being and happiness. Unfortunately, the parents are unable to communicate with each other and perceive any justice in the others position, even where it concerns the best interests of their son, which should have been their common purpose.
Their inability to truly communicate with each other and arrive at flexible arrangements concerning the child makes the ideal of joint legal custody with the concept of joint decision making called for in the statute (General Statutes § 46b-56a) unworkable. Hence, I must, at this time, reject the husband's claim echoed by the child's attorney for joint legal custody.
The mother is, and has been, since the birth of the boy, his primary caretaker, which the father does not dispute. The father has much to give the boy, as a father, and should have substantial opportunity and liberal access to him, in order to better contribute to his growth, development and well being.
At this time, I am convinced that the child's best interest requires that sole legal custody of the child should remain with mother, that father's parenting time with the child should be enhanced, and that when the child is with him, he should have physical custody. CT Page 12171
The parties have accumulated assets of modest value during their marriage of eight plus years. The husband discloses on his financial affidavit a one-third interest in a two-family dwelling at 328 Main Street, Portland, Connecticut. Title to the other two thirds is in his parents. This property was purchased by his parents shortly before the marriage for a price of $157,000 and has declined in value to $120,000. Hence, the value of the defendant's interest, after deduction of the mortgage balance of $101,755, is approximately $6,081.
The couple made no monetary contributions to the down payment for the property. The wife claims that during the almost seven years the couple resided in the house, they made regular monthly payments to the husband's parents. From time to time, they also expended joint monies for various repairs or improvements to the property, but these were in large part reimbursed by the defendant's parents. The couple's monthly payments to the defendant's parents were characterized as rent for the dwelling, rather than payments of mortgage principal, interest and real estate taxes.
The wife further asserts that this characterization was `imposed' or `foisted' upon her. The evidence is convincing, however, that the defendant's parents paid for all of the repairs to the premises, and the taxes and mortgage payments directly. They also paid for heating oil and the sewer and water charges. From the record as a whole, I find that the couple's monthly payments were in the nature of rent or use and occupancy, as the parents have characterized them in their tax returns. The couple did not take deductions in their tax returns for any portion of the taxes or mortgage interest. I agree, however, with the plaintiff that the husband's one-third interest in the premises is a `marital asset' subject to distribution or equitable assignment under General Statutes § 46b-82. See Watson v. Watson, 221 Conn. 698, 711 (1992);North v. North, 183 Conn. 35, 39 (1981). Accordingly, I considered the defendant's one-third interest in the property in the fashioning of the financial awards set forth hereinafter.
I find from the credible evidence that the values of the other assets of the parties are as follows:
 A 1990 Pontiac motor vehicle $ 4,000 (driven by wife) CT Page 12172 A. 1993 Ford motor vehicle $20,525, less loan of $7,200, equity of 13,325 (driven by husband) Husband's bank accounts 670 Husband's retirement plan 4,852 Husband's mutual fund (Putnam Investment) 667 Wife's bank accounts 9,573 Wife's 401K plan (vested pension) 306 ------- Total: $33,393
There is also $1,125 held by the wife as custodian for the child and some U.S. bonds held by the parties and in other's names for the benefit of Bryan. The parties agreed on the record that the $1,125 and bonds would continue to be kept for the child's benefit.
When the wife left the home, she took some furniture, furnishings, a curio collection and her jewelry with her. She discloses no value for these items on her financial affidavit. See note 2, infra. At the same time, the husband values the parties' tangible personal property (with the exception of the 1990 Pontiac and 1993 Ford motor vehicles) in excess of $28,000. From the description afforded the court of the various items taken by the wife, and those remaining in the possession of the husband, and their provenance, I conclude that with the exception of a few articles, they have already been substantially equitably apportioned.
Against the assets above described, the husband reports on his financial affidavit, $11,000 in liabilities, of which $2,000 is due his attorney and $1,800 due the attorney for the child. The balance of $7,200 is due his parents, but is also reported elsewhere on his financial affidavit (Schedule 4B) as a loan against the 1993 Ford. The wife reports $495 in credit card and charge account balances.
These additional findings are made.
The husband's parents have been the source of substantial financial contributions and loans to the parties and the husband individually throughout (and before) the marriage. Each of the parties have made substantial monetary contributions to the marriage from their net earnings; as the husband's earnings were always greater than those of the wife, his CT Page 12173 monetary contributions exceeded hers. On the other hand, her nonmonetary contributions as primary homemaker and child care giver exceeded his. The husband has greater earnings and earning capacity than the wife, and accordingly, a greater opportunity than she has to acquire capital assets and income in the future. This is especially so in the light of his parents' custom in providing him with substantial loans and gifts in the past and his ability to reside in the jointly-owned home for a modest rental. This is despite the fact that the wife and child currently reside in her parent's home without payment of room and board, which allows her to enjoy a net surplus of income over expenses, including debt service,[2] which I view as not a permanent situation. The parties have equal employability.
The father's child support obligation as determined by the guidelines is $138 per week. I am not persuaded by either of the defendant's claims of deviation. His first claim, that of the wife's greater earning capacity, is not proven, as he has not shown she has deliberately reduced her earnings or is working at less than capacity, in the light of the fact that she also cares for the child. His second claim, that he travels 500 miles per month (between Portland and Mystic) to exercise his visitation rights cannot be deemed to constitute extraordinary and significant visitation expenses within the meaning of § 46b-215a-3 (b)(3) of the Child Support and Arrearage Guidelines (eff. June 1, 1994) (Guidelines).
In any event, the wife's day care expense for the child of $118 per week, which are necessary for her to maintain employment, and which I find reasonable, is a criterion which could support or justify an upward departure from the guidelines amount. See § 46b-215a3(b)(6)(B) of the Guidelines. This factor outweighs the defendant's claim for downward deviation.
I have considered all of the factors in General Statutes §§ 46b-62, 46b-81, 46b-82, 46b-84 and 46b-215a and in the light of the evidence and findings in the determination of the financial awards hereinafter set forth. I have also considered the taxable consequences of said awards.
Accordingly, the following orders shall enter.
(1) The marriage of the parties is hereby dissolved on the ground of irretrievable breakdown. CT Page 12174
(2) Sole legal custody of the minor child of the parties, Bryan, is awarded to the mother; physical custody, access and parenting time with the father to be as follows: every other weekend from Saturday at 9 a.m. to Sunday at 6 p. m., commencing November 11, 1995; every other Thursday from 4:30 p. m. to 8:30 p. m. (before the weekend the child is with mother). Father shall pick up the child at day care and should arrive at least one-half hour early. Alternating holidays; Christmas Eve until 10 a.m. Christmas Day; Christmas Day from 11 a.m. to 10 p. m.; Thanksgiving vacation from Thursday 9 a.m to Sunday 6 p. m., with father having Bryan with him Christmas Eve and Thanksgiving in 1995; and every Father's Day from 9 a.m. to 6 p. m. Mother shall have Mother's Day. In the event father's regularly scheduled weekend is followed by a holiday Monday, then his time with the child shall be extended to such Monday until 6 p. m. In the event Bryan's birthday falls on a day when he is with mother, father shall have the child the next day from 4:30 p. m. to 8:30 p. m., if a week day; from 9 a.m. to 6 p. m. if a Saturday, Sunday or holiday. In the event of a conflict between regular access and specific holiday, birthday or vacation access, then the specific access shall control.
Father shall also have alternating summer school vacations and three non-consecutive weeks (Monday, 9 a.m. to Sunday, 6 p. m.) in the summer, and shall provide all transportation.
The issues of joint legal custody, transportation of the child between the parents, expanded weekend, summer and school vacation period access and telephone contact, the child sleeping in the father's bed, the child's eyeglasses, and religious training are referred to Family Services for mediation and evaluation and recommendation, if necessary, and the matter is continued for review to April 15, 1996.
I decline to enter orders with respect to the child's religious training, residence within the state, the defendant's drinking or taking of `fire calls' during his physical custody, or telephone access. However, the court suggests that the mother initiate a telephone call to father, at his expense, at least once per week, and prepare the child with a specific news item or topic he can relate to his father.
Each party shall keep the other informed of their CT Page 12175 addresses and telephone numbers. Neither shall move more than 25 miles from their present residence without first giving the other sixty (60) days written notice of such move. The mother shall provide copies of all school and medical records relating to the child to the father promptly.
(3) The husband shall pay to the wife the sum of $138 per week as child support by immediate wage garnishment, payable directly to her. The parents are obligated to support the child pursuant to General Statutes § 46b-84.
(4) The husband shall maintain his present job-related medical and dental insurance for the child; the parties shall share unreimbursed, uncovered health-related expenses for the child, 50/50. An order pursuant to General Statutes § 46b-84 (d) shall enter.
(5) The husband shall have the dependency exemption for the child in 1995 for income tax purposes and in odd-numbered years thereafter, provided he is current on his child support payments. The wife, in even years commencing 1996.
(6) Each parent shall designate the child as irrevocable beneficiary of the life insurance policies shown on their respective financial affidavits until his 19th birthday, which shall be for the purpose of child support; each shall execute and deliver authorizations to the other so that the other may, from time to time, determine the status of said policies.
(7) The wife shall take, have and own the following personal property which is assigned to her: the 1990 Pontiac motor vehicle; the savings and checking accounts shown on her financial affidavit; her 401K plan; and the tangible personal property now in her possession with the exception of the items listed in paragraph 8, infra.
(8) The husband shall take, have and own the following real and personal property which is assigned to him: the one-third interest in 328 Main Street, Portland; the 1993 Ford motor vehicle, he shall pay the loan thereon and save the wife harmless; the tangible personal property now in his possession; his bank accounts; his Putnam Investment Fund account and his pension plan benefits. The wife shall turn over to him the following: a wedding band; a highchair; a bachelor CT Page 12176 chair; two quilts; a 35mm camera; the toy `Jeep'; all duplicate photographic prints of the child; and all negatives of the child, which may be copied at defendant's expense. In the event the defendant desires any photographs of the child for which there are no duplicate prints or negatives, then copies of the `positives' may be made at his expense.
(9) Each party shall pay his or her own attorney's fees.
(10) I find that the sum of $2,100 is fair and reasonable as total attorney's fees for Attorney Dixon for his representation of the child in these proceedings. The wife shall pay 40 percent thereof, the husband 60 percent, by monthly payments of not less than $50 each.
(11) The husband shall pay to the wife as a property assignment the sum of $3,670 in equal monthly payments of $50 each commencing December 1, 1995, with a `balloon' payment February 1, 1998. Said award shall be secured by a lien on his one-third interest in the 328 Main Street, Portland, real estate. Default in the payment of any installment shall result in acceleration of the unpaid balance and interest shall commence to accrue on the unpaid balance at the rate of ten (10%) percent per annum.
(12) The husband shall pay to the wife the sum of $20 per week as periodic alimony, taxable income to the wife and deductible by husband, until October 1, 1997. By that time, the parties' son will be in school full time, and the wife's day care expenses should be substantially reduced. Said alimony payments shall terminate sooner upon the death of either party, the wife's remarriage or pursuant to General Statutes § 46b-86b.
(13) The amount of $1,125 shall continue to be held by the wife as custodian for the minor child, Bryan, under the Uniform Gift to Minors Act (CUGMA), General Statutes § 45a-546, et seq., as it may be amended. The bonds shall also continue to be held in trust for the child, either under the CUGMA or other appropriate designation.
(14) All documents of title or other instruments incidental or necessary to the effectuation of the orders entered herein and the transfer of personal property, shall be CT Page 12177 completed and exchanged within thirty (30) days hereof.
Teller, J.