[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 10111
By complaint dated January 6, 1996 the plaintiff husband, Richard Bernaiche commenced this action seeking a dissolution of marriage on the grounds of irretrievable breakdown, joint legal custody, exclusive use of the family home, property settlement and other relief. The defendant wife Martha Bernaiche appeared through counsel. Both parties appeared with counsel on April 29, May 17 and June 18, 1999 and presented testimony and exhibits. The court after hearing the testimony and reviewing the exhibits makes the following findings of fact.
The plaintiff husband married the defendant wife (whose maiden name was Benson) on November 14, 1987 at Cheshire, Connecticut. He has resided continuously in the state of Connecticut for one year next preceding the date of the filing of this complaint. All statutory stays have expired. The parties have one minor child born to the defendant since the date of the marriage, issue of the marriage: Lauren Bernaiche born October 28, 1988. No other minor child or children have been born to the defendant since the date of the marriage. The Court further finds that no state or municipal agency is contributing to the support of the parties and/or their child.
The plaintiff is 47 years old a high school graduate. He sustained a fracture to his thoracic spine while sleigh riding with his stepson which has healed and presently enjoys good physical health. His job history relates that as of the date of the marriage with the defendant, he was working for an oil company located in Waterbury, Connecticut as an assistant service manager operating his own truck. In October 1989, he left the Waterbury job and began his employment with Yankee Gas Company as a service mechanic helper. He has worked his way up to the position of meter service mechanic. The plaintiff has worked overtime which included extra pay for "on call" duty, emergency calls and mealtime pay during overtime duty. In 1995 to 1996, the employer eliminated mealtime pay and changed the shift periods resulting in the plaintiff limited to "on call" duty one week per month. The plaintiff has also stopped working for other employees "on call" time since January of 1999.
The husband reported income of $855.00 per week on his financial affidavit as a meter service mechanic on June 26, 1996. His income rose to $1,221.00 per week as of April 28, 1999. The CT Page 10112 husband also reports he had some income from the sale of golf clubs he made and/or repaired in 1996, which he no longer earns. At the time of the marriage of the parties, the defendant was also paying child support for two minor children from his prior marriage.
The defendant is 41 and was the recipient of a G.E.D. She operated a small day care business at the time of the parties marriage until the time Lauren became ill. She has also received training as a paralegal (four month course) but could not obtain employment due to her limited skills. She has also received training as a surrogate parent advocate for children with disabilities and presently has a contract with the State of Connecticut to perform advocacy services for clients referred to her. She also performs surrogate parent advocacy services for private clients. The defendant enjoys good physical health. She does however suffer from ADD, i.e., attention deficit disorder resulting in difficulty with memory, recall and sequencing of events. The defendant reflected no income in her 1996 financial affidavits other than child support of $129.00 per week paid by the plaintiff pursuant to the court order. On her April 29, 1999 financial affidavit she reported $155.00 per week income from her surrogate parent advocacy business, which she operates out of her residence through the use of a computer and telephone.
The defendant was previously married to an individual named Robert Martin, with their relationship terminated by divorce on August 31, 1987 (Defendant's Exhibit 2). She had two children Justin and Valerie Ann who were issue of her first marriage. Both children resided with the plaintiff and defendant throughout their marital relationship. The defendant only received "a couple of checks" for child support from her ex-husband. She did not pursue any arrearage or payment of future support from Mr. Martin until after the plaintiff and the defendant in the present controversy had separated. The plaintiff supported his two children from a prior marriage, his stepchildren, the defendant and their minor child Lauren (i.e., five children and a spouse) from income obtained from his employment with some assistance from the defendant's parents which will be discussed later in this opinion. As stated above, the marriage of the parties started with a family of four, the plaintiff, defendant and her two children from a prior relationship. The plaintiff was working overtime, as available, to meet the needs of the family. In addition to his employment, the plaintiff was active in sporting endeavors such as softball in the evenings that he did not work CT Page 10113 late. He also loved to golf and repaired and/or made golf clubs in 1993-1996.
The defendant was the caretaker for her two children Justin and Valerie Ann, who were not supported by their father Robert Martin. The plaintiff testified that the defendant did not want any contact with her ex-husband because of alleged sexual assaults on her, a family member, a babysitter and Valerie. The defendant basically confirmed the plaintiff testimony. At the time of the marriage other parties in the present case, Valerie was 2 years old and Justin was 3-1/2 years old. Valerie has been diagnosed as suffering from ADD (attention deficit disorder) and has recently been diagnosed as a ADHD (attention deficit hyperactivity disorder) and bipolar disorder (psychiatric diagnosis) which requires extra care and attention for her special needs. Justin suffers from ADHD, obsessive compulsive disorder, learning disabilities and delay in gross motor skills. He has also been diagnosed as a high functioning autistic child requiring a constant daily routine needing one on one contact.
The parties relationship was good according to the plaintiff until 1989. The defendant testified that the plaintiff created problems initially after their marriage concerning interaction with Justin and Valerie Ann. She stated the plaintiff failed to assist her in maintaining a structured daily routine for the children. The parties purchased their home in 1987. The purchase of 91 Pinecrest Drive, Southington, Connecticut was made possible by a mortgage note and deed for $20,000.00 and an additional unsecured note for $20,000.00 in favor of the defendant's parents, Edward F. and Faith B. Benson. (Defendant's Exhibit 4) The parties and (later the plaintiff only) made payments on the mortgage note but no payments have been made on the unsecured note. Both parties signed the notes and mortgage in favor of the Bensons. The parties also received additional sums during the marriage from the Bensons totaling $38,000.00 by way of cash, gifts, a computer, renovation of kitchen and floor, etc. (Defendant's Exhibits J, K L).
The defendant gave birth to the parties only child, Lauren Bernaiche on October 28, 1988. Lauren unfortunately was also borne with problems that were brought out and/or exacerbated by a viral meningitis condition that she contracted in September of 1989. After release from the hospital she became ill again with seizures and vomiting. She was finally diagnosed as suffering from a complicated migraine and cluster headache syndrome and ADD CT Page 10114 with cognitive deficiencies in written language and math requiring physical and occupational therapy. The plaintiff rather than stay and assist his wife in caring for his stepchildren and/or comforting his daughter Lauren who was ill, chose to go out of state and play in a softball tournament. The defendant had to bring Lauren to the doctor and arrange for child care for Justin and Valerie Ann. Lauren was hospitalized on a Friday and while she was critical with a high fever she was diagnosed with viral meningitis. He returned to see her on Saturday and was told she was out of danger. He then went back to play softball until his team was eliminated from the tournament. The defendant related that this episode reflected the plaintiffs true character concerning his lack of caring and emotional involvement with the children and family.
The parties relationship deteriorated after the hospitalization of Lauren. The plaintiff continued to work and play sports, while the defendant stayed at home to care for her three children. She provided no income to pay the family's bills and expenses. The plaintiff complained that the defendant was controlling the children, including Lauren and that she would not involve him in medical appointments, child care, etc. The defendant testified that the plaintiff was never home because of overtime, softball, golf, etc. She further stated that his manner in disciplining the children called for yelling and striking the children including Justin and Valerie Ann. The defendant, while admitting to using a loud voice with the children denies that he used any inappropriate punishment and was in no way abusive.
In November, 1995 Dr. Main a psychiatrist was consulted concerning the problems of the parties. The parties marriage broke down irretrievably according to the defendant after the plaintiff fractured his back in a sleigh riding collision in December, 1998. The plaintiff was required to seek bed rest at home in a cast that immobilized his back. The defendant did not want him to come home from the hospital because she wanted a separation. As a result of the defendants position that the marriage had broken down, the plaintiff and the three children vacated the marital residence. The plaintiff lived alone with assistance from his relatives who made him dinner, cleaned the house, etc., while he was recuperating. While the plaintiff was still in a back brace, he filed the present dissolution of marriage complaint dated January 15, 1996.
The parties since the date of the complaint have contested CT Page 10115 the issue of custody of the minor child Lauren. The defendant contends that the parties agreed to settlement of custody and all other pending issues after pretrial as evidenced by a separation agreement signed by the parties. (Defendant's Exhibit C) The plaintiff contended that while he signed the document, he did not agree to its terms and subsequently discharged his attorney and hired a substitute counsel. The terms of the separation agreement dated August 20, 1998 have been modified by the agreement of the parties concerning custody and visitation. The parties have signed and filed with the court, a stipulation concerning custody and visitation dated April 29, 1999. Furthermore, both the plaintiff and defendant are seeking orders that are in substantial variance with the provisions of the separation agreement of August, 1998. The plaintiff contends the agreement was not and is not fair and equitable in 1998 and at present. The defendant through statements of her counsel at the time of final argument has specifically waived the right to seek specific performance, i.e., adoption of the provisions of the separation agreement of August, 1998 and incorporation into this courts judgment. Based upon the above change of circumstances of the parties re: income and/or earning capacity, liabilities, expenses and change in custody and visitation as agreed to by the parties, the Court shall not incorporate the separation agreement of the parties into the judgment. The Court will render orders taking into consideration the statutory factors regarding alimony, child support, property settlement and/or counsel fees based upon the financial situation of the parties as of the date of trial, not August of 1998. Based upon the evidence and facts of this case, the Court shall not incorporate the separation agreement into the judgment. Sands v. Sands, 108 Conn. 98 (1982); North v. North,183 Conn. 35 (1981).
After hearing the testimony and relevancy of the exhibits the court has difficulty believing the testimony of plaintiff concerning his claims of daily care for his daughter from birth to the time of separation. The court cannot find that he was the primary or co-primary caretaker of his daughter based upon his work schedule, recreational schedule and temperament. The Court concludes that the defendant was the parent who met the child's daily needs of food, clothing, bathing, educational and medical care not the plaintiff. The Court further concludes, that prior to the separation, he was not an active participant in the medical needs and special educational and social training for his daughter as evidenced by his laizze faire attitude towards his daughter's serious illness. As for the defendant, the Court finds CT Page 10116 that she has not given sufficient credit to the plaintiffs heavy financial load in supporting her and the three children (and two children of a prior relationship) while they resided together. There is also no doubt that if not for the kindness and generosity of the defendant's loving and generous parents, the Bensons, the Bernaiche family could not have afforded the marital home and improvements.
The defendant further claimed throughout the trial that the plaintiff was the cause of the breakdown of their relationship. She claimed that he was verbally abusive to the children and used inappropriate corporal punishment. She also claimed that he spent money on himself (golf tournaments, golf equipment) and did not assist in the day to day care of his daughter and stepchildren. She repeatedly claimed that he was not candid in his disclosure of income and assets in response to questions by her counsel at deposition and at trial. The Court finds that the plaintiff did not deal with the special needs of the children in an appropriate manner and relied on the Bensons to provide his wife with the "extras" in life that he provided to himself. The Court finds that the plaintiff was evasive in his responses to questions at the deposition and at trial concerning his finances and liabilities.
While mindful of the defendants claims, the Court was presented with the proposition that the defendant herself failed to disclose in her previous filed financial affidavits that she pursued a claim for back child support against her former husband after she left the marital home and separated from the plaintiff. On March 26, 1996 the defendant obtained a court order against her former spouse which found him in arrears for $40,000.00 in child support. The defendant was ordered to transfer $20,000.00 from his 401k.plan and is continuing to pay the remaining $20,000.00 at $50.00 per week plus a current order of $100.00 per week. (Plaintiffs Exhibit 2) These sums were not disclosed by the defendant nor did she disclose that she had received money from the 401k plan (check for $6,800.00, Plaintiffs Exhibit 4). She did not disclose or verbally explain where the difference between the $20,000.00 payments by her ex-husband and the check for $6,800.00 was applied or paid. The Court also has to weigh the credibility of the defendant's testimony on the further fact that since the separation of the parties and pendency of this complaint, the defendant has reinstated the relationship between Justin and Valerie Ann and their father, Robert Martin. The defendant has also requested that the Court restore her former CT Page 10117 name of Martin, the very person she alleged to be the man who allegedly sexually assaulted her and others based on her feeling that she should have the same last name as Justin and Valerie Ann. The Court, as trier of fact, is the sole arbiter of the credibility of the witnesses Christine v. Eager, 129 Conn. 62
(1942).
The Court finds that, although the parties held themselves out as a family with there children, the plaintiff and defendant led separate lives. The plaintiff worked hard, played softball, golf, made and repaired golf clubs, while not at work. The defendant had all she could do to maintain the household and deal with the every day problems of motherhood and three special needs children. The parties lived a lifestyle that they simply could not afford without the infusion of funds from the Bensons. The Bensons generosity permitted them to purchase a home and later sustained the family while the plaintiff was out of work for a strike, or when the plaintiff did not earn sufficient money to cover expenses. The Court further finds that the plaintiff was inappropriate in his lack of patience in dealing with the children and his involvement in meeting the day to day needs of his daughter until the time of the parties separation. Subsequent to the separation, he chose to take a more active and healthy role in the upbringing of his minor child Lauren. The Court further finds that the plaintiff failed to adequately advise his wife of the parties financial situation throughout the marriage and provided himself with recreation (softball, golf, etc.) to the exclusion of his wife who had to rely on her parents for extra money for herself and the children.
The plaintiff claims that he requested the defendant to go out and seek employment during the marriage which she failed to do. The Court finds that reasons stated by the wife, i.e., lack of education and skills and the time required by the children prohibited her from seeking employment outside of the home, were valid and truthful reasons. The wife did educate herself and receive training while living with the defendant as a licensed surrogate parent with an earning capacity. The Court finds a present earning capacity of $250.00 per week as of the date of the trial between the parties. Said finding of earning capacity is based upon the testimony of the defendant, financial affidavit and reasonable availability of public contract (State of Connecticut) and private clients. The Court finds that she can earn this income and still meet the needs of her three children. The Court further finds that the defendant is working a CT Page 10118 reasonable earning capacity based upon income stated in his financial affidavit.
As to the fault of the wife for the breakdown of the marriage, the Court has heard all the testimony and reviewed the exhibits. The Court finds that the defendant lacked candor concerning either her claims of sexual abuse by Robert Martin during the marriage and/or her failure to demand financial assistance through payment of past and future child support for her two children by Robert Martin. She also lacked candor concerning her failure to disclose the court order and receipt of funds from her ex-husband after the present divorce complaint was filed by the defendant. Further, the requested change of her own last name back to "Martin", further sheds doubt on her previous allegations of sexual abuse by Robert Martin resulting in the plaintiff's support of all 3 children without assistance of child support from Robert Martin.
The Court further finds that both parties love and care for their daughter, Lauren. The plaintiff has exhibited his love for his daughter by finally taking an active part in her upbringing post-separation. The defendant has always been a caretaker of Lauren and will continue to do so in the future.
The Court has considered all of the statutory factors concerning custody and visitation set out in Connecticut General Statutes §§ 46b-5 6, 46b-5 6a and 46b-5 9. the Court has considered all of the factors in Connecticut General Statutes §§ 46-56, 46b-59, 46b-81, 46b-82, 46b-83,46b-89 and 46b-62 and other pertinent statutes, tax implications, earnings and earning capacity differential causes for the breakdown of the marriage and the consequences of the financial awards set forth below. The Court, with jurisdiction in this matter finds that the statutory stays have expired and the facts set out in the complaint are proven true. Judgment shall enter dissolving the marriage of the parties on the ground of irretrievable breakdown. It is further ordered that:
1. Custody of the Minor Child.
a. The parties shall share joint legal custody of the minor child, Lauren Bernaiche.
b. The mother shall have parenting time with the minor CT Page 10119 child at all times not specifically awarded to the father in his parenting time schedule.
c. The father shall have parenting time with the minor child as follows:
(1) Every other weekend from Friday at 5:00 p. m. until Monday morning at which time the father shall take the child to school. If there is no school, the father shall return the child by 10:00 a.m. on Monday. If father is unable to be available for the child during the Sunday overnight, he shall return the child to the mother at 7:30 p. m. on Sunday evening after giving appropriate notice to the mother.
(2) Every Wednesday from 5:00 p. m. overnight to Thursday morning at which time the father shall take the child to school. If there is no school, the father shall return the child by 10:00 a.m. on Thursday. If father is unable to be available for the child during this overnight, he will return the child to her mother at 7:30 p. m. on Wednesday evening after giving mother appropriate notice.
(3) April school vacations from the last school day before vacation at 5:00 p. m. until the day the child returns to school. Father shall take the child to school on this morning.
(4) Any other time as the parties shall agree.
d. The parties shall share holidays by alternating major holidays each year and alternating Christmas, Christmas Eve at noon to Christmas Day at 10:00 a.m. one year and Christmas Day at 10:00 a.m. to 8:00 p. m. the next. Mother shall have Christmas Day holiday in even numbered years, and Father shall have the Christmas Day holiday in odd numbered years.
e. The child shall be with the Father on Father's Day, and the Mother on Mother's Day.
f. The parties shall alternate the Easter and Thanksgiving Holidays each year. The Mother shall have Thanksgiving in all odd numbered years and Easter in all even numbered years. The Father shall have Thanksgiving in all even numbered years, and Easter in all odd numbered years. The Thanksgiving and Easter Holidays shall be from the eve of the holiday at 6:00 p. m. until 8:00 p. m. on the day of the holiday. CT Page 10120
g. Each party shall have the child for two non-consecutive weeks during the summer school vacation. The parties shall inform one another by May 1st of each year regarding which two weeks they shall be exercising for vacation with the child. There shall be at least 30 days notice prior to the start of the selected vacation period. Each parties' vacation shall supersede the parenting time of the other party during the vacation period. The mother shall always have the child the week immediately proceeding the start of school for the minor child.
h. Both parties shall share time with the child on the child's birthday.
i. The holiday and vacation schedules shall supersede all regular parenting time schedules.
j. Neither party shall discuss, in any manner, the dissolution or custody issues in the presence of, or with, the minor child.
k. The father shall be responsible for ensuring that the child is fully prepared for school, including completed homework assignments, on Mondays and Thursdays. The mother shall be responsible for ensuring that the child is fully prepared for school, including completed homework assignments, on Tuesdays, Wednesdays and Fridays.
l. When either parent is unavailable to exercise their parenting time, the other party shall be contacted first to check their availability to parent the child before a relative, babysitter or third party is utilized to care for the child.
m. The parties shall exert every reasonable effort to maintain free access and unhampered contact between the child and each of the parties, and to foster a feeling of affection between the child and the other party. Neither party shall do anything which may hamper the free and natural development of the child's love and respect for the other party.
n. The parties shall consult with one another with respect to the child's education and religious training, summer camp selection, illnesses, and operations (except in emergencies), health, welfare, and other matters of similar importance affecting the child, whose well-being, education, and CT Page 10121 development shall, at all times, be the paramount consideration for the mother and father.
o. Each party shall be entitled to complete, detailed information from any pediatrician, general physician, dentist, consultant or specialist attending the child for any reason whatsoever and to be furnished with copies of any reports given by the latter, or any of them, to the other parent. The parties shall inform one another in the event of any illness, accident or other circumstance seriously affecting the health or welfare of the minor child.
p. The parent with whom the child is staying at any particular time shall take the responsibility for meeting medical and dental emergencies, and in the event of an emergency the permission of both parents shall not be necessary, provided that the parent having the child at the time of such emergency shall notify the other parent as immediately as is reasonably possible. Both parents shall provide any caretaker of the child, including, but not limited to babysitters, school and camp personnel with the telephone numbers of both parents, to be used in case of an emergency.
q. Each party shall be entitled to complete, detailed information from any teacher or school giving instructions to the child, or which the child may attend, and to be furnished with copies of all reports given by them to the other parent.
r. The day-to-day decisions of a routine nature, including, but not limited to bedtime, homework, healthcare, and day-to-day school, religious, social and athletic activities customary for a child of her age and maturity, shall be made by the parent with whom the child is actually staying at that particular time. The parents shall endeavor to cooperate and establish mutually agreeable policies regarding these day-to-day decisions, with the goal of ensuring a reliable and consistent schedule upon which the child can rely.
s. Each parent shall have the right to speak with the child by phone on a reasonable basis on those days when he/she does not enjoy parenting time with the child. Each parent shall keep the other apprised of their work and home telephone numbers at all times.
t. Neither party shall relocate the child's home without CT Page 10122 providing the other with sixty (60) days written notice to the other. Neither parent shall relocate the child's permanent residence from the State of Connecticut without the express written consent of the other parent, or order of the court.
u. The parties shall continue family sessions with Dr. Michelle Toomey for as long as deemed necessary by Dr. Toomey. The costs of such sessions shall be divided equally between the parties.
v. The parties shall return to Dr. Toomey for all post judgment visitation and parenting issues prior to any motions for same being heard by the Court.
w. The defendant shall not permit the minor child to be left alone in the presence of Robert Martin, the defendant's ex-husband, nor will the wife permit the child to travel to visit with Robert Martin in conjunction with her children, Justin and/or Valerie's visitation with him.
2. Child Support. The plaintiff shall pay the defendant the sum of $129.00 per week in child support. Said sum is in conformance with the child support guidelines. The plaintiff and defendant shall exchange federal income tax returns annually while the child support and/or alimony orders contained in this judgment are in force and effect. The return shall be exchanged within 5 days of filing by mailing a copy of said return to the other party.
3. Medical Insurance. The husband shall maintain medical insurance for the benefit of the minor child as available through his place of employment. Each party shall pay for one-half of the child's reasonable and necessary unreimbursed or uncovered medical, dental, orthodontic, optical, opthamalogical, psychological and/or psychiatric expenses for the minor child.
4. Life Insurance. The plaintiff shall maintain his life insurance policy at his present place of employment with Yankee Energy in the face amount of $48,000.00 and/or any other insurance made available through his present place of employment or future place of employment naming the minor child as irrevocable beneficiary of one-third of the death benefit on said insurance until the minor child reaches the age of majority. The defendant shall also maintain all life insurance as available through her future places of employment, with the minor child as CT Page 10123 irrevocable beneficiary of one third of the death benefit until said minor child reaches the age of majority.
5. IRS and State Tax Exemption. The plaintiff shall be entitled to claim the minor child as a dependent for federal and state income taxes for each calendar year beginning calendar year 1999.
6. Medical Insurance Coverage for Plaintiff and Defendant. Each party shall maintain his or her medical insurance as available through any present or future place of employment. The defendant shall be of the right to obtain insurance coverage through the husband's medical insurance plan at his place of employment pursuant to the provisions of COBRA at her election and expense. The plaintiff is further ordered to execute any and all documents necessary to effectuate the provisions of this paragraph.
7. Alimony. The plaintiff shall pay to the defendant periodic alimony in the amount of $150.00 per week for a period of seven years with said alimony tax includable to defendant and tax deductible to the plaintiff. Said alimony shall be nonmodifiable as to duration, subject, however, to termination upon the first of the occurrence of the following events prior to said seven year termination date.
a. Death of either party.
b. Remarriage of the wife.
 c. Cohabitation by the wife as provided by Connecticut General Statute § 46b-86(b).
8. Marital Residence. The defendant shall quitclaim all of her right, title and interest in and to the marital residence located at 91 Pinecrest Drive, Southington, Connecticut to the plaintiff. The plaintiff shall pay and hold the wife harmless from any liability on the first mortgage which is found to be $88,000.00, lien to Equity One in the amount of $3,000.00 and lien in favor of Mr. and Mrs. Benson, the defendant's parents in the principal balance amount of $6,300.00 payable without interest. The plaintiff shall further pay the taxes and insurance on said property and further hold the defendant harmless from any liability thereon. CT Page 10124
9. Twenty Thousand Dollar Demand Note to Benson: The defendant shall pay and hold the plaintiff harmless from any liability on the $20,000.00 demand note payable from the plaintiff and defendant to the defendant's parents, Mr. and Mrs. Benson.
10. Automobiles. The plaintiff shall have all right, title and interest in and to the 1987 Chevrolet Celebrity and the defendant shall have all right, title and interest in and to the 1988 Plymouth Voyager.
11. Bank Accounts and Stock. The plaintiff shall have all right, title and interest in and to the Dutchpoint Credit Union account and one share of Yankee Gas stock. The defendant shall have all right, title and interest in and to the Southington Savings Bank Account and the Webster Savings Bank Account.
12. Remaining Funds for Past Due Child Support from RobertMartin. The defendant shall have all right, title and interest in and to the remaining funds in the possession of the defendant due from her ex-husband, Robert Martin for back due child support for the minor children Justin and/or Valerie who were issue of their prior marriage.
13. Liability. The plaintiff shall pay and hold the defendant harmless from any liability due to Dutchpoint Credit Union, CitiBank Mastercard, Household Credit Mastercard, Fleet Mastercard, New Haven Savings Bank, 401K loan, and BankBoston. The defendant shall pay and hold the husband harmless from any liability for the debts to Visa, FCNB, Dr. Toomey, Southington Tax Collector and the Woodall School.
14. Attorney's Fees to Guardian Ad Litem and Attorney forMinor Child. The Court orders the parties each to pay one-half of the attorney's fees for guardian of the minor child, Attorney Robert D. Zaslow, with the total amount due found at $118.75. The parties shall further each pay one-half of the total bill for services for attorney of the minor child, Rhonda M. Maura, with the total amount found to be due of $270.00. Said payment shall be made within thirty days from the date of this judgment.
15. Allowance to Defend. The plaintiff shall pay to the defendant's counsel the sum of $3,000.00 as an allowance to defend said action. Said payment shall be made by the first anniversary date of this judgment. CT Page 10125
16. Deferred Compensation Plans. The plaintiff shall have all right, title and interest in and to his pension plan with Yankee Energy. The plaintiff shall further assign and/or transfer $10,000.00 of his 401k plan to the defendant. The defendant shall pay any state and federal income tax liability upon withdrawal of said sum.
17. Other Personal Property. The parties each have all right, title and interest in and to any other personal property of the marriage presently in their possession.
18. Change of Name. The defendant name shall be returned to her former name of Martin.
Devin, J.