[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Both parties appeared and were represented by counsel. All statutory stays having expired, the court has jurisdiction.
The plaintiff withdrew her complaint so the parties proceeded on the defendant's cross complaint.
Having heard the evidence, the court finds as follows:
The defendant and the plaintiff, whose maiden name was Maslauskas, intermarried at Pomfret, Connecticut on August 26, 1989; that the plaintiff has resided continuously in Connecticut for a period of one year next preceding the date of the filing of this complaint; that there are no minor children issue of the marriage; that there were no minor children born to the plaintiff since the date of the marriage of the parties; that the marriage has broken down irretrievably with no hope of reconciliation and that no state agency is presently contributing to the care or welfare of the parties.
The parties lived together for three years prior to their marriage. They differed about having children. The defendant did not want children but the plaintiff did. However, although plaintiff became pregnant twice, she had two abortions.
The defendant testified that the breakdown of the marriage was because CT Page 9838 of constant arguing between the parties about work and money; that plaintiff often lied to defendant and was secretive; that she would not disclose what she did with her income nor tell him what she did about money she received from her family; that she often lost things due to an Attention Deficit Disorder that plaintiff suffered from; that she lost the diamond ring that he gave her; that the replacement ring which was insured for $29,500.00 she sold for $7,500.00; that plaintiff kept a messy home; that she didn't put her clothes away; that he was tired of picking up after her; that both parties drank a lot of alcohol and that this contributed to the marital problems; that she slapped him and on occasion pushed him.
The plaintiff testified that the defendant had a vicious temper; that he used it against the plaintiff; that he threatened to kill her; that he held her hostage in his car, then kicked her out of the car at the train station around midnight and told her to go back to her (expletive) family; that when she was taking a shower, he told her to go out and bring in the dog or he would beat her to death and stuff her in a bag; that she was fearful of the defendant; that his behavior caused her to become depressed, a condition she did not have before the marriage; that the defendant refused to undergo counseling to help save the marriage; that the defendant had about eight guns and kept a loaded 37 magnum revolver in his night table and terrorized her with it: that he attempted to choke her and would pull some of her hair out of her scalp, that she pushed the defendant to get away from him many times when he was pulling her hair out and choking her and that she threw a Rock Cornish game hen at the defendant trying to hurt him.
Plaintiff admitted that she suffered from an attention deficit disorder which pre-existed her marriage but which got worse after the marriage.
The plaintiff, who was born February 25, 1958, appears to be in good physical health but suffers from Attention Deficit Disorder and depression which she claims resulted from her marriage to the defendant.
The plaintiff received a B.A. degree in Philosophy from Marquette University. During her marriage she has had numerous employments. She worked as a bank teller, a real estate agent and customer service, involved in business and legal reports in Madison and for the past four to five years she has been employed by Ikon Business Products in Norwich, Connecticut. Her income is in the $30,000.00 to $40,000.00 range. According to her financial affidavit, she nets $491.29 per week. Her continued employment seems secure.
The defendant, who was born June 9, 1948, claims to be in good health but takes allergy medication. He graduated with a BA. degree in English CT Page 9839 from Assumption College and received his certification to teach.
The defendant had numerous jobs during his marriage to the plaintiff. For the past three years he has been employed by the Hartford Business Journal as a sales manager. He claims the highest he earned in that position was in the $60,000.00 range but because sales are down, his income has decreased. Presently he claims that he earns about $50,000.00 per year. According to his financial affidavit, plaintiff nets $669.00 per week. The defendant has a greater earning capacity than the plaintiff and his continued employment seems secure.
During the marriage the parties purchased a marital home in Old Lyme, Connecticut for $265,000.00. The plaintiff used $80,000.00 of a pre-marital inheritance she had received for the down payment. The home was sold for $365,000.00 which netted the parties $114,436.51. The plaintiff and defendant each received an advance of $25,500.00, with the balance of $63,436.51, which is drawing interest, held in escrow by defendant's attorney.
Defendant's Exhibit 1 contains items of personalty acquired by the parties during the marriage and pre-marital assets. Based on defendant's value, the marital assets listed on Defendant's Exhibit 1 total $70,850.00. The assets plaintiff took from said list total $62,150.00, while the assets the defendant took total $8,700.00. The plaintiff offered no evidence to contradict said values.
In addition, the plaintiff has a 1996 Volvo valued at $13,000.00 but which is subject to an encumbrance of $10,765.00 and a 1989 Toyota with no value. She also owns an Essex Savings Bank checking account of $100.00 and a Fleet Bank Savings account of $100.00. She also has a 401K plan plus stock valued at $12,600.00. He also owns a 1989 Volvo valued at $1,000.00 and an inheritance he received from the estate of his Aunt Jean valued at $335,260.00.
Prior to his aunt's death, the defendant received two $10,000.00 gifts from his aunt for estate tax purposes. The defendant claims said amounts went into his bank account and were used to pay bills.
The defendant claims that he contributed more to the marriage than did the plaintiff, by his payment of the mortgage, taxes, home insurance, personal property, the second mortgage and all major household bills except for the electricity, telephone, car insurance, etc.
There is no question that the defendant had the greater income of the parties and that probably all of his income went to the family as he does not appear to have any substantial savings. However, it seems equally CT Page 9840 clear that the plaintiff contributed most of her income to the family as her only monetary asset seems to be her 401K plan valued at $12,600.00. Because of this and the household services plaintiff rendered as a housewife in addition to her employment, this court finds that the parties equally contributed to the family unit during the existence of their marriage.
In January 2001, the defendant's Aunt Jean died. His inheritance from her estate totals $335,260.00. A $40,000.00 advance to the defendant from his aunt's estate is being held in escrow by defendant's attorney pending the court's decision in this case.
The plaintiff claims that the inheritance defendant received from his aunt is a marital asset available for distribution between the parties. She testified that the defendant was estranged from his aunt and family but that she maintained a favorable relationship with the defendant's family and aunt which was beneficial to the defendant and helped result in the inheritance to the defendant from his Aunt Jean.
The defendant seeks to prevent the plaintiff from sharing in the inheritance he received from his Aunt Jean on the grounds that the marriage was over at that time since plaintiff told the defendant in the fall of 2000 that she intended to file for a divorce; that she left the parties' bedroom in December 2000 and moved to the third floor of the home; that she instituted the divorce action March 28, 2001 before the aunt's estate was finalized and that the plaintiff had no part in maintaining the defendant's relationship with his aunt. The court, however, believes the plaintiff.
It is settled under Connecticut case law that the defendant's inheritance from his aunt received during his marriage to the plaintiff is considered to be a part of the "estate" of each of the parties. SeeNorth v. North, 183 Conn. 35, (1981) and Karen v. Parciak-Karen,40 Conn. App. 697 (1996).
Based on the evidence presented, it is clear that the marriage of the parties has broken down irretrievably without any hope for reconciliation. I find that the defendant is more at fault for the breakdown of the marriage than the plaintiff.
After considering the provisions of Connecticut General Statutes (C.G.S.) §§ 46b-62, 46b-81 and 46b-82 and in light of the evidence and my findings, judgment is entered dissolving the marriage of the parties on the grounds of irretrievable breakdown. It is ordered that:
1. The defendant shall pay to the plaintiff as alimony $1.00 per year CT Page 9841 for a period of ten years, her death or remarriage, whichever is the first to occur. Said alimony is modifiable to amount only. However, in the event of plaintiffs cohabitation with an unrelated male pursuant to C.G.S. § 46b-86b, said alimony may be modified or terminated.
2. The plaintiff shall keep, as her own property, the Newport Timeshare valued at $5,000.00, her 401K plan valued at $12,600.00, her furnishings and jewelry listed on Defendant's Exhibit 1 valued at $62,150.00, her Volvo wagon valued at $2,500.00 and the $25,500.00 received from the sale of the family residence.
3. The plaintiff shall receive and keep her pre-marital $80,000.00 used as a down payment on the purchase of the marital home. Said money shall be paid from the funds held in escrow by defendant's attorney plus any interest that has and/or may accrue on said money held in escrow. Said funds shall be given to plaintiff immediately or if an appeal is taken to this judgment, within 30 days after the appeal is decided.
4. The plaintiff shall receive $125,000.00 from the inheritance the defendant received from his Aunt Jean.
5. The defendant shall keep as his own property his furnishings listed on Defendant's Exhibit 1 valued at $8,700.00; his Volvo valued at $1,000.00, the $25,500.00 received from the sale of the family residence and the balance of the inheritance he received from his Aunt Jean after paying to plaintiff her share.
6. Each party shall be responsible for one half of the debts listed on plaintiffs financial affidavit totaling $15,100.00, listed on the plaintiffs financial affidavit.
7. Each party shall pay their own attorney's fees and costs of suit.
JTR Vasington