Richard O'Bymachow *v.* Debra Lee O'Bymachow
(4582)

Borden, Daly and Bieluch, Js.

Argued January 5—decision released August 18, 1987

*William H. Cashman,* for the appellant (defendant).

*Hugh H. Keefe,* with whom, on the brief, were *Charles E. Tiernan III* and *Patrick Filan,* for the appellee (plaintiff).

BORDEN, J. This case is a sequel to our decision in *O'Bymachow* v. *O'Bymachow,* 10 Conn. App. 76, 521 A.2d 599 (1987). There we found error in the trial court's refusal to hear the defendant's motion to open its judgment denying the defendant's motion for modification of an earlier judgment of dissolution. That motion to open was based on an allegation of fraud, and the court's refusal to hear the motion was based on the fact that the judgment which the defendant sought to open was on appeal. Id., 76–77.

We ordered the trial court to hear the defendant's motion to open promptly, and retained the defendant's original appeal on our docket pending the results of that hearing. Id., 78–79. Upon remand, the trial court denied the defendant's motion to open, finding that she had not established fraud. The defendant has specifically waived her right to appeal from that determination. We turn, therefore, to the merits of the defendant's original appeal.

The defendant appeals from the denial by the trial court, *Clark, J.,* of her motion to modify that portion of the judgment of dissolution, *Ottaviano, J.,* relating to unallocated alimony and support. The trial court concluded that the defendant had failed to show the necessary substantial change of circumstances. This appeal followed.

After a hearing held on October 1, 1985, the trial court on October 7, 1985, made the following specific factual findings.[1] Pursuant to the original judgment,

---

[1] At the conclusion of the hearing, the court orally denied the defendant's motion, finding that "the defendant has failed to show a substantial

dated July 6, 1982, the plaintiff was ordered to pay the defendant $450 per month as unallocated alimony and support for their minor child, who was then one year old. The defendant did not file an affidavit at that time.[2] In 1982, she was working two part-time jobs, and earning $187 per week. The court further found that she now works two part-time jobs, and earns $240 per week. One of her jobs, the court found, is as a school nurse; and, the court found, she is a registered nurse with special training as a nurse anesthetist but is not working at that specialty.

The court also found that the plaintiff's net income in 1982 was $330 per week, and is now $340 per week. His employment is unchanged, he drives the same car as in 1982, and he carries the same amount of life insurance. He no longer owns $30,000 worth of stock which he owned in 1982, and his liabilities have increased by $76,000. The court also specifically found that, with reference to the parties' financial condition, "[t]he only items that have changed since the date of the dissolution were the pieces of real estate owned by the defendant and owned by the plaintiff," and that "[t]he only change of circumstances that [the] defendant has shown is that she has a man living in the house with her."

It is not necessary to address each of the six claims of error raised by the defendant. We conclude that, because of the coalescence of the merits of three of these claims, the "underpinning of the [court's] deci-

---

change in circumstances. . . ." In response to the defendant's motion for articulation, the court, on October 7, 1985, issued a written memorandum of decision.

[2] The defendant testified that she was unrepresented by counsel in the initial dissolution proceedings. The plaintiff testified that it was his understanding that his attorney was representing both parties. The trial court file discloses no appearance for the defendant at the time of the original judgment, and an appearance only for the plaintiff.

sion is not sound"; *Ehrenkranz* v. *Ehrenkranz,* 2 Conn. App. 416, 423, 479 A.2d 826 (1984); and that a new hearing is required.

"We recognize that a party seeking modification of financial orders incident to a marital dissolution judgment must clearly and definitely establish an uncontemplated[3] substantial change of the circumstances of either party which demonstrates that continuation of the prior order would be unfair and improper. *Wingerd* v. *Wingerd,* 3 Conn. App. 261, 262, 487 A.2d 212 (1985). We also recognize the well established standard of review in this court of the trial court's actions in such matters. We do not substitute our judgment for that of the trial court. *Vanderlip* v. *Vanderlip,* 1 Conn. App. 158, 159, 468 A.2d 1253 (1984). Great weight is due the action of the trial court, which will not be disturbed unless the court has abused its discretion or its finding has no reasonable basis in the facts. *Rose* v. *Rose,* 10 Conn. App. 391, 393, 523 A.2d 914 (1987); *Wingerd* v. *Wingerd,* supra, 263." *Fabiano* v. *Fabiano,* 10 Conn. App. 466, 469, 523 A.2d 937 (1987). As in *Fabiano,* we conclude that the defendant did carry her burden of establishing an abuse of the court's discretion in denying her motion for modification.

First, two sets of the court's specific findings are unsupported by the evidence in the case and are clearly erroneous. There is simply no evidence whatsoever to

---

[3] We note that General Statutes § 46b-86 (a) which provides for modification "upon a showing of a substantial change in the circumstances of either party," has been repealed and substituted by Public Acts 1987, No. 87-104. That act states, in relevant part, that "modification may be made upon a showing of such substantial change of circumstances, *whether or not such change of circumstances was contemplated at the time of dissolution.* By written agreement, stipulation or by decision of the court, those items or circumstances that were contemplated and are not to be changed may be specified in the written agreement, stipulation or decision of the court." (Emphasis added.) This act is not effective until October 1, 1987, and therefore does not affect this case.

support the findings of the court that the defendant works as a school nurse, that she is a registered nurse with special training as a nurse anesthetist, and that she is not working at that specialty. Indeed, the defendant's financial affidavit, filed on the date of the modification hearing, indicates that she works at two commercial establishments, namely, "Kleban's" and "Wild Bill's." We can only conclude that the court must have confused the defendant with a party in another case. The court's factual conclusion that the defendant has a man living in the house with her is similarly flawed. The only evidence to support such a finding was that, since February, 1985, a man with whom the defendant has a relationship stayed overnight at her house an average of three nights per week, and took the defendant and her daughter to Vermont to ski during the winter weekends. This evidence is insufficient to establish that the defendant was living with this man. See *Kaplan* v. *Kaplan,* 186 Conn. 387, 441 A.2d 629 (1982).

The plaintiff argues that any errors in these findings of the court are harmless, because the finding regarding the amount of the defendant's weekly earnings, namely, $240, was supported by the evidence, and because the court's finding regarding the defendant's relationship with another man did not result in a decrease in her alimony. See General Statutes § 46b-8 (b); *Kaplan* v. *Kaplan,* supra. The error as to the nature of the defendant's employment, and its implicit reference to her earning capacity, and the error as to the nature of her relationship with the other man, might in isolation be harmless. Taken together, however, and taken with the other errors made by the trial court, they undermine appellate confidence in the court's fact finding process, and contribute to our conclusion that a new hearing is required.

Second, the court's finding that, with respect to the financial condition of the parties, the only changes

involved the pieces of real estate owned by them, is inconsistent with undisputed critical facts in the record. In October, 1982, the plaintiff was the sole owner of two businesses, and listed them on his financial affidavit at values "unknown." The summary of assets on his October 1982 affidavit reflected no values for them. The plaintiff's affidavit, submitted in October, 1985, in connection with the defendant's motion for modification, disclosed a total value of the two businesses of approximately $202,000. The plaintiff, called as a witness by the defendant, testified that in 1982 the businesses were in fact worth $260,000, or approximately $50,000 more than in 1985. The court's decision implicitly involved a finding that the known values of the plaintiff's businesses in October, 1985, when compared to the unknown or zero values as disclosed on the plaintiff's October 1982 affidavit, does not constitute a substantial change of circumstances. We believe that such a finding is erroneous.

The defendant had the burden of establishing a substantial and unforeseen change of circumstances from the date of the judgment. *Cersosimo* v. *Cersosimo,* 188 Conn. 385, 405, 449 A.2d 1026 (1982). The issue presented by this set of facts is whether the financial base at the time of the judgment in October, 1982, is to be determined by reference to the values of the plaintiff's businesses in October, 1982, *as established in the October 1985 modification proceedings,* or whether that base is to be determined by reference to the values, or lack thereof, *attributed to them by the plaintiff at the time of the original judgment in October, 1982.* We conclude that, for purposes of determining whether their values in 1985 constituted a substantial change of circumstances, those values must be compared to the values, or lack thereof, as represented in the 1982 proceedings.

In October, 1982, the plaintiff in effect attributed no value to his businesses on his financial affidavit. Both

the defendant and the court were entitled to rely on that evidence at that time. See *Grayson* v. *Grayson,* 4 Conn. App. 275, 494 A.2d 576 (1985), appeal dismissed, 202 Conn. 221, 520 A.2d 225 (1987). Presumably, that was one of the factors which induced the trial court, *Ottaviano, J.,* to approve the agreement of the parties. Furthermore, since the plaintiff was the owner of the businesses, he had the easier access to the information as to their values, and thus he had the greater obligation to present that information both to the court and to the defendant. Under these circumstances, it would be unfair and inequitable to permit him in October, 1985, to take advantage of values which he did not disclose in October, 1982. To put it another way, in establishing a change of circumstances, the defendant was entitled to take as a starting point the values of the businesses as displayed to her and to the court at the time of the original judgment. Viewed through this lens, the increase in the values of the plaintiff's businesses from "unknown" or zero in October, 1982, to $202,000 in October, 1985, must be viewed as substantial and unforeseen.

Third, the court's findings effectively disregarded undisputed facts showing a substantial increase in the value of the plaintiff's real estate. The plaintiff's October, 1982 affidavit indicated as his sole real asset a one-half interest in the parties' home in East Haven, valued at $12,500. His October, 1985 affidavit indicates a home in Branford valued at $525,000, which he owns jointly with his current wife, on which there is a mortgage of $150,000, yielding an equity owned by the plaintiff of $187,500.[4] He testified that he purchased the Branford house in October, 1984, for $330,000,[5] and

---

[4] The plaintiff also subtracted from the value of this house a $50,000 loan, but admitted in his testimony that this was an unsecured "oral note" to his sister on which he made no payments.

[5] The plaintiff testified that his current wife contributed only $15,000 toward the $330,000 purchase price.

had a contract in October, 1985, to sell it for $525,000. Even if we deduct the $50,000 unsecured loan from the plaintiff's sister; see footnote 4, supra; from the proceeds of the sale of the Branford home, the value of the plaintiff's real estate increased from $12,500 in October, 1982, to $162,500 in October, 1985.

This increase in the value of the plaintiff's real estate, namely $150,000, taken together with the attributed increase in the value of his wholly owned businesses of $202,000, indicates an increase in the value of these assets of $352,000 within three years. The court found that the plaintiff's earnings only increased from $330 per week in October, 1982, to $340 per week in October, 1985. In October, 1982, his total net assets were approximately $44,000. In October, 1985, his total net assets were approximately $373,000.[6] Such a dramatic increase in the value of assets in such a short period of time, for a person of such moderate income, can only be considered as substantial and unforeseen.

There is error, the judgment denying the defendant's motion for modification is set aside, and the case is remanded for a new hearing on that motion.

In this opinion the other judges concurred.

---

[6] This figure is derived by adding to the value of his businesses and real estate the value of various items of personalty shown on the plaintiff's 1985 affidavit. It is true that the trial court found that the plaintiff's liabilities had increased by $76,000 from 1982, but that finding is also erroneous. That figure is derived from comparing the plaintiff's 1982 and 1985 affidavits. The 1982 affidavit indicated total liabilities of $6000. The 1985 affidavit indicated total liabilities of $80,000. The $80,000 figure consists, however, of two components: (1) the $50,000 debt to his sister, which had already been deducted from the equity in his house; and (2) a $30,000 note payable, shown as a "House purchase loan." The plaintiff's testimony indicates, however, that $15,000 of this $30,000 "loan" was in fact a draw from one of his wholly owned businesses, which was later changed to show as a loan on the books of the business. In any event, the repayment of this loan, which is not evidenced by any promissory note, is totally within his control, and even if it were repaid, it would be to his wholly owned businesses. We can hardly consider that a true liability.