[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION 
This matter comes before the court post-judgment on the CT Page 9394 plaintiff's motion to open judgment pursuant to P.B. 326, filed April 9, 1998. On December 24, 1997, the parties' marriage was dissolved and orders were entered pursuant to an agreement between the parties (with the exception of the disposition of one piece of artwork). The plaintiff seeks an order opening the judgment claiming that it should be opened because it is based on mistake, mutual mistake, and/or fraud and the demands of equity require it.
The matter at the center of the controversy involved in the plaintiff's motion is the defendant's interest in the pension plans administered by the plaintiff through his business. Post-judgment, it was discerned that the defendant has a $700,000.00 pension interest titled in her name. Throughout the proceedings of the parties' dissolution of marriage this sum and the interest it represents was carried by the plaintiff as attributable to him and owned by him, subsumed within and a part of the approximately $2,100,000 pension funds that he declared on his financial affidavit at the time of dissolution of marriage.
The procedural history of this court action is relevant to a proper disposition of the motion before the court. This action commenced in May, 1996. At that time, the plaintiff was represented by Attorney Gary Cohen who remained his counsel of record until November 4, 1997. For a brief time thereafter, the plaintiff was represented by Attorney Arnold Rutkin. Then, he was pro se until Attorney Ellen Lubell entered an appearance for him on December 4, 1997. She remains his counsel. Throughout the proceedings, the defendant has been represented by Attorney Jean Welty. During the pendente lite period there was discovery. Each party prepared numerous financial affidavits. More than one judicial pretrial was held at which proposals for settlement detailing assets and proposed distributions were provided. On the date of the final hearing, the parties each submitted updated financial affidavits. With the exception of transfer of title of the former marital home and $200,000.00 to be transferred from the plaintiff to the defendant the stipulation of the parties which became the terms of the judgment provided that each party would "retain all assets in their respective names". The plaintiff's financial affidavit at the time of the dissolution detailed the following deferred assets:
 "Myer B. Shimelman, M. D.P.C. Profit Sharing (five plans) (value reflects tax liability of 40% which will be paid upon withdrawal from the plan) $2,186,751.00
CT Page 9395
Hospital of St. Raphael (est.) $38,000.00 ____________________________________ _______________ Total Value $2,224,751.00"
 The defendant's financial affidavit at the time of the dissolution detailed the following deferred compensation:
 "IRA-Prudential Bache (10/31/97) $ 22,134 IRA-Smith Barney (10/31/97) 239,715 TDA-Northwestern Mutual (9/30/97) 19,868 St. of Conn.-not vested IRA Merrill Lynch $ 645 MB Shimelman M.D., P.C. P/S Plan -value unknown _________________________________ ____________ Total Value $282,362"
The assets with values attached equal the $282,362.00. At no time in any pretrial filing, disclosure, or at the final hearing did the defendant declare a value for her interest in the MB
Shimelman pension plans. No written proposal for settlement, whether in actual proposal provisions or in attendant detailing of assets ever attached a value to her interest in these plans. None of either parties' written proposals for settlement attributed any value to the defendant's interest in the plans.
The defendant acknowledged at hearing that she had no knowledge of the amount of her interest in the plans at any time in the pretrial proceedings or on the day of the hearing on the dissolution of marriage. Nor did the plaintiff. Much of the hearing was spent in a parade of witnesses designed ultimately to convince the court that the missing piece of information was, ultimately, available to and discoverable by both parties. That was acutely clear. The testimony then turned to providing each party's excuses or perceptions that resulted in their non- acquisition of the information.
Some years ago, the Shimelman family and the plaintiff's business switched accountants. A form 5300 is needed to be filed with the Internal Revenue Service. A phone call was made to the pension plan attorney as to the number of plan participants. As a result of the communication one plan participant was listed. There were two, the parties. Dr. Shimelman recalls that his wife was put on the plan so that more money could be put into deferred compensation. That reporting of one plan participant was not CT Page 9396 corrected throughout the years. In response to discovery requests, Dr. Shimelamn provided Ms. Shimelman with one 5300 showing one plan participant. Nothing else on this was provided. Ms. Shimelman did not inquire further, although she knew she had a plan interest which she carried as value unknown on her financial affidavit. She was content to wait until after the dissolution was final to find out what that interest is. Dr. Shimelman was not concerned because it was his understanding that he will be the owner of his company profit sharing plans. His understanding is that these have an approximate value of $2,100,000.00. Any small interest his wife might have is not a part of that money he understood would remain with him. Dr. Shimelman testified, unrebutted by his former wife that at a charity fundraiser, where they saw each other in April, 1998, she told him that she thinks her interest is about $25,000.00. It is he who has inquired and found it in the range instead of $700,000.00. And, so, this matter has ensued.
The movant's argument is simple: We were both mistaken; if only I was mistaken and my former wife knew, he reasons, then this is not a case of mutual mistake but instead a case of fraudulent concealment. Nothwithstanding all of this, he argues it would be grossly inequitable to leave the judgment undisturbed.
"While courts have an inherent power to open, correct or modify judgments, [citation omitted]; the duration of this power is restricted by statute and rules of practice. In order for a trial court to open a civil judgment, a motion to open or set aside must be filed within four months of the date the judgment is rendered. General Statutes sec. 52-121a; Practice Book sec. 326. . . . " Batory v. Bajor, 22 Conn. App. 4, 8, 575 A.2d 1042, cert. denied, 215 Conn. 812, 576 A.2d 541 (1990).
Practice Book section 17-4 (formerly section 326) states "[u]nless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the superior court may not be opened or set aside unless a motion to open or set aside is filed within four months succeeding the date on which notice was set." The court notes that this motion was brought within four months of judgment. In considering a motion to reopen judgment that has been timely filed within four months the court must exercise its discretion. Ziruk v. Bedard, 45 Conn. App. 137, 139, 695 A.2d 4, cert. denied, 701 A.2d 339, 243 Conn. 905 (1997). In exercising CT Page 9397 that discretion, this court may look, generally, to the grounds under which the judgment would be reopened regardless of the four month time period. One of those circumstances is where mutual mistake has occurred.
In testimony both parties agreed that of the terms of the property settlement the $200,000 transfer represented a buyout by Dr. Shimelman of his alimony obligation to the defendant. The asset split under the parties' financial affidavits, otherwise left $3,292,762 with the defendant, not including the $700,000.00 at issue here and $2,835,480 to the plaintiff, including the $700,000.00 at issue here, reference being made to the parties' financial affidavits from dat of final hearing, December 24, 1998. The split, percentage wise, as stated above is 46% to the plaintiff and 54% to the defendant, based upon the two asset totals equalling $6,128,242. If the $700,000.00 is swung into the defendant's total and out of the plaintiff's, as the present situation would provide for, then that split is 65% to the defendant and 35% to the plaintiff. The court finds that this represents a significant difference, and that at trial, it is likely that a different result would occur, the obligation for alimony and its "buy-out" being considered separately.
While the defendant does not concede that the amount in question is significant or might have resulted in a different outcome if its title owner were known at time of final hearing, she also argues the plaintiff could have discovered the information in the exercise of due dingence, pretrial. Corbin v.Corbin, 179 Conn. 622, 626, 427 A.2d 432 (1980).
It is undisputed that upon proper inquiry the information now at hand was available to both parties pretrial. Both parties were and still are trustees of the pension plans. The plaintiff, however, has the right to rely on the defendant's financial affidavit disclosing value unknown and adding nothing, no sum, in for the defendant's interest in the pension plans. It is the law in Connecticut that the placement of 'value unknown' for an asset on a financial affidavit is construed as a zero value for that asset. O'Bymachow v. O'Bymachow, 12 Conn. App. 113, 118-119,529 A.2d 743 (1987).
Both parties, and the court, relied on the financial affidavits of the parties. The agreement between the parties which became the judgement provided a result, where the plaintiff would own all assets in his name, which the financial affidavit CT Page 9398 of plaintiff disclosed for all to rely on to be $2,224,751. The subsequent discovery that the defendant had title to $700,000 of those funds altered this allocation by 32% of the deferred compensation assets.
The court finds the judgment as it stands, based on the facts found here, is not what the parties had bargained for. Both were mistaken as to the amount of deferred compensation funds owned by the plaintiff. Both failed to take appropriate steps to inquire as to the pension assets in the defendant's name. The result however, is severely unfair to one party and very advantageous to the other party. The court finds the result inequitable.
The plaintiff's motion is granted.
The parties' counsel are ordered to appear on August 25, 1998 at 9:30 a.m. for a status conference for selection of a trial date.
Munro, J.