BARBARA RICCIUTI *v.* MICHAEL RICCIUTI
(AC 21816)

Lavery, C. J., and Dranginis and Dupont, Js.

Argued September 19—officially released December 17, 2002

*James W. Shea,* for the appellant (defendant).

*Lee Marlow,* with whom was *Bernard Christianson,* for the appellee (plaintiff).

*Opinion*

LAVERY, C. J. The defendant, Michael Ricciuti, appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Barbara Ricciuti. On appeal, the defendant claims that the court improperly (1) awarded 25 percent of his pension to the plaintiff, (2) determined that the value of the parties' real property at 289 Old Toll Road in Madison was $175,000 and (3) ordered him to refinance the real properties he was awarded to pay the property distribution of $136,000 that was awarded to the plaintiff. We affirm the judgment of the trial court.

The court made the following factual findings that are not in dispute on appeal. The parties were married on July 16, 1977. They have four children who were born to them during their marriage.[1] The plaintiff was forty-four years old at the time of the dissolution of the marriage. She graduated from high school and has one year of college education. Since May, 1998, the plaintiff has owned a 50 percent share in Spacolli Enterprises, LLC, a home improvement business. That share is valued at $12,000. In November, 2000, the plaintiff injured her back and was scheduled to return to work after surgery. The court found that she has an earning capacity of $400 per week.

The defendant is fifty-eight years old and is in generally good health. From 1974 to 1996, he was employed with the United States Department of Defense. The

---

[1] Only one child was a minor at the time of trial.

defendant receives a pension from the Department of Defense in the amount of $642 per week. Since September, 2000, the defendant has been employed as a teacher at Xavier High School in Middletown, where he receives a weekly net income of $462.

The parties owned a marital home at 299 Old Toll Road in Madison, which is not encumbered by any mortgages or liens. The parties stipulated that the value of that property was $240,000. The parties also owned property at 289 Old Toll Road in Madison, which is encumbered by a mortgage with a principal balance of $100,000. The value of that property was in dispute at trial and now on appeal. Both parties presented expert appraisal testimony as to the value of 289 Old Toll Road. The court determined that the value of the property was $175,000.

The court found that the plaintiff was at fault for the breakdown of the marriage due to two extramarital affairs. One of those affairs was with her business partner at Spacolli Enterprises, Frank Sanzero, with whom the plaintiff planned to live after the dissolution of the marriage. The court awarded no alimony to the plaintiff.

The following financial awards that are the subject of the defendant's appeal were made by the court. First, the plaintiff was awarded 25 percent of the defendant's monthly pension from the Department of Defense. Second, the plaintiff was awarded $136,000 as a property distribution. The defendant was ordered to pay the plaintiff's property distribution through a refinancing of the properties at 289 and 299 Old Toll Road, which were awarded to the defendant by the court.

I

The defendant first claims that the court improperly awarded the plaintiff 25 percent of his pension. On appeal, he argues that his pension is not property that

may be assigned pursuant to General Statutes § 46b-81.[2] We disagree.

The court has the authority to distribute the property of either spouse after dissolving a marriage. General Statutes § 46b-81 provides in relevant part that the court "(a) . . . may assign to either the husband or wife all or any part of the estate of the other. . . . (c) In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party . . . shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

Our Supreme Court has concluded that vested pension benefits are property that the trial court may

[2] In his appellate brief and at oral argument, the defendant argues that the court did not consider that his pension was in lieu of social security benefits and that the defendant is not eligible for social security benefits, although the plaintiff may be eligible. The defendant, therefore, argues that his pension should not be considered as property for distribution, or, in the alternative, that the case be remanded to the trial court for consideration of whether any social security benefits of the plaintiff should have been considered in the property distribution.

There was, however, no evidence presented at trial concerning the relationship between the defendant's pension and social security, nor was any evidence offered concerning the plaintiff's eligibility for social security. The defendant is limited on appeal to the evidence presented at trial and "cannot be permitted to rely upon matters never called to the attention of any trier of fact. The factual issue [the defendant] seek[s] to raise for the first time on appeal cannot be adequately explored at this stage of the proceeding." *Beechwood Gardens Tenants' Assn.* v. *Dept. of Housing,* 214 Conn. 505, 516, 572 A.2d 989 (1990); see also *Gupta* v. *New Britain General Hospital,* 239 Conn. 574, 593 n.16, 687 A.2d 111 (1996). We therefore decline to review the defendant's new factual allegations raised for the first time on appeal.

assign.[3] *Krafick* v. *Krafick*, 234 Conn. 783, 798, 663 A.2d 365 (1995). In *Krafick*, the court explained that "[i]t is widely recognized that the primary aim of property distribution is to recognize that marriage is, among other things, a shared enterprise or joint undertaking in the nature of a partnership to which both spouses contribute—directly and indirectly, financially and non-financially—*the fruits of which* are distributable at divorce. . . .

"Pension benefits are widely recognized as among the most valuable assets that parties have when a marriage ends. . . . Pension benefits are an economic resource acquired with the fruits of the wage earner spouse's labors which would otherwise have been utilized by the parties during the marriage to purchase other deferred income assets. . . . Both the nonemployed spouse and his or her wage earning marital partner have the same retirement goals and expectancies regarding the pension benefits as they would if they provided for their later years by using wage income to purchase other investments." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 795–96.

Here, the defendant began receiving a pension from the Department of Defense after his retirement in 1996. The pension accrued over twenty-two years, during nineteen of which the parties were married. The court, therefore, correctly determined that the defendant's pension was subject to distribution under § 46b-81.

---

[3] In doing so, our Supreme Court stated that "[p]ension benefits represent a form of deferred compensation for services rendered. . . . They do not constitute mere gratuities . . . as the interest in receiving such benefits is contractual in nature. Whether the plan is contributory or noncontributory, the employee receives a lesser present compensation plus the contractual right to the future benefits payable under the pension plan. . . . [Vested pension benefits] are contract rights of value . . . . As contractual rights, pension benefits are a type of *intangible* property . . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Krafick* v. *Krafick*, supra, 234 Conn. 794–95.

We must next determine whether the court's award to the plaintiff of 25 percent of the defendant's pension was proper. "The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case, such as demeanor and attitude of the parties to the hearing. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Sowinski* v. *Sowinski*, 72 Conn. App. 25, 30, 804 A.2d 872 (2002).

The court made detailed factual findings and applied those facts to the factors set forth in § 46b-81 (c) that a court must consider when distributing property after dissolving a marriage.[4] Specifically, the court stated in its memorandum of decision: "The plaintiff is entitled to a portion of the defendant's pension benefits given the accrual of those benefits over the course of their lengthy marriage, the plaintiff's contributions, both financial and nonfinancial, to the marriage, and her lack of pension benefits of her own. The plaintiff's fault in ultimately causing the breakdown of her marriage, the significant disparity in the parties' ages and, given that disparity, the plaintiff's greater ability to acquire capital assets in the future counsel for a diminished distribution

[4] General Statutes § 46b-81 (c) provides in relevant part that the court "shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

to her. After carefully considering all of the statutory criteria set forth in General Statutes § 46b-81, I award the plaintiff 25 percent of the defendant's monthly pension benefits." The court's findings are supported by the record, and its application of those facts to the statutory considerations in § 46b-81 (c) demonstrate that the court did not abuse its discretion in awarding the plaintiff 25 percent of the defendant's pension.

## II

The defendant next claims that the court improperly determined the value of the property at 289 Old Toll Road. He argues that the court's conclusion that the value of the property was $175,000 was clearly erroneous and not supported by the evidence. We are not persuaded.

The following additional facts are necessary for our resolution of the defendant's claim. At trial, the plaintiff provided expert appraisal testimony from Gordon S. Williams. Williams valued the property at $175,000 utilizing a sales comparison approach. The defendant offered the expert appraisal testimony of Thomas Boyle. Boyle also used a sales comparison method and valued the property at $145,000. The court ultimately determined that the value of the property was $175,000.

"We have long held that a finding of fact is reversed only when it is clearly erroneous. . . . A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *Hammick* v. *Hammick*, 71 Conn. App. 680, 686, 803 A.2d 373, cert. denied, 262 Conn. 908, 810 A.2d 273 (2002). We note that "a trial court has broad discretion in determining the value of property. In assessing the value of . . . property . . . the trier arrives at his own conclusions by weighing the opinions of the appraisers, the claims of

the parties, and his own general knowledge of the elements going to establish value, and then employs the most appropriate method of determining valuation. . . . The trial court has the right to accept so much of the testimony of the experts and the recognized appraisal methods which they employed as he finds applicable; his determination is reviewable only if he misapplies, overlooks, or gives a wrong or improper effect to any test or consideration which it was his duty to regard." (Internal quotation marks omitted.) *Porter* v. *Porter*, 61 Conn. App. 791, 799–800, 769 A.2d 725 (2001).

Here, the court reviewed the evidence offered at trial and determined the value of the property to be $175,000. The court's determination is supported by adequate evidence in the record, including that from the plaintiff's expert witness. Our review of the record and transcripts provides no indication that the court's conclusion was clearly erroneous.

### III

The defendant's final claim on appeal is that the court improperly ordered him to refinance the properties, which he was awarded, to pay the plaintiff her property distribution award of $136,000. We disagree.

As previously stated, this court will not reverse a financial order in a domestic relations case unless there was an abuse of discretion. *Sowinski* v. *Sowinski*, supra, 72 Conn. App. 30. "In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did. . . . [I]n determining [whether there has been an abuse of discretion] the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness." (Citation omitted; internal quotation marks omitted.) Id.

The defendant argues that the court abused its discretion because he is fifty-eight years old, and the plaintiff was awarded 25 percent of his monthly pension, thereby reducing his income. Those facts, the defendant asserts, cause refinancing to become a financial burden, and the court must hear evidence concerning the ability of the defendant to refinance before it can make such an order. There is, however, no evidence of an abuse of discretion.

The court had evidence that a refinancing arrangement was agreed on and contemplated by the parties, and noted that in its memorandum of decision.[5] In addition, the court had the financial affidavits of the parties as evidence when it issued its orders, and, thus, it was able to determine the respective financial needs and abilities of each party. Given those facts, the court had a reasonable basis on which to order the defendant to refinance the properties to pay the plaintiff's property

[5] In the defendant's proposed orders, proposal number five states: "Within six (6) months the [defendant] shall obtain mortgages to purchase [the plaintiff's] share of the properties . . . ."

Also, the following colloquy occurred at trial:

"The Court: And . . . let me ask you. I briefly looked at the proposed orders, and it may be in there, but with respect to the marital home, what is your proposal? I understand it's [75 percent-25 percent]. But are you requesting that [the defendant] be able to live with [one of the parties' children] and then it be sold when he graduates from high school or what is the proposal?

"[Defendant's Counsel]: No, my proposal is [that] the plaintiff quitclaim her interest in the two properties to [the defendant] and that within six months, he obtain refinancing, and mortgage, to pay off that equity to [the plaintiff], and we didn't make any statement, but clearly the order could be a lien on the property or something to protect that interest.

"The Court: And I understand the percentages you dispute . . . but my understanding is [that the plaintiff] does not want the properties.

"[Plaintiff's Counsel]: Correct.

"The Court: And I take it you have no problem with him paying it through a refinancing of the properties; is that correct?

"[Plaintiff's Counsel]: No, Your Honor.

"The Court: Okay."

distribution award of $136,000, and, therefore, there was no abuse of discretion.

The judgment is affirmed.

In this opinion the other judges concurred.