MARIE CLAIRE FRANCE MARTIN *v.* FRANCIS WALTER MARTIN
(AC 27514)

Flynn, C. J., and Schaller and Hennessy, Js.

Argued January 3—officially released May 8, 2007

*Kevin B. F. Emerson*, for the appellant (defendant).

*Jean M. Stawicki*, for the appellee (plaintiff).

*Opinion*

SCHALLER, J. In this marital dissolution action, the defendant, Francis Walter Martin, appeals from the judgment of the trial court with respect to the court's financial orders. Specifically, the defendant claims that the court abused its discretion by (1) awarding the plaintiff, Marie Claire France Martin, 100 percent of the equity in the former marital residence, (2) awarding the plaintiff 100 percent of the equity in the residence as an offset against an award of alimony on the basis of erroneous findings, (3) valuing the residence as of the date of the parties' separation instead of the date of dissolution and (4) valuing the residence without any appraisal or expert testimony. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. The parties were married on August 8, 1987, in Quebec, Canada. Although the parties did not have any issue of the marriage, for a period of time the plaintiff's children

from a prior relationship resided with the parties. The defendant, a former Connecticut state police trooper, had received two disability pensions (pensions) since 1981, prior to his marriage to the plaintiff. The parties stipulated that, as of November 30, 2005, the value of the defendant's pensions was $363,000.

In 1998, the parties purchased a condominium located at 64 Highland Circle (residence) in Colchester. The purchase price for the residence was $147,900, and the parties financed $133,100. The defendant, with the help of the plaintiff, made numerous improvements to the residence. The parties stipulated that, as of November 30, 2005, the value of the residence was $272,500, subject to a mortgage of approximately $99,723.77, resulting in equity in the amount of $172,777. The defendant moved out of the residence in December, 2003, and did not contribute to the mortgage, the plaintiff's living expenses or the expenses associated with the residence.

The plaintiff commenced the dissolution action on February 4, 2004. After a one day trial, the court issued its memorandum of decision on December 20, 2005. The court found that the marriage had broken down irretrievably without hope of reconciliation, with the defendant having been more at fault for the breakdown. After considering the pertinent statutory factors, the court dissolved the marriage and issued various financial orders. Specifically, the court ordered that the "defendant shall quitclaim any interest he had in the [residence] to the plaintiff. She shall assume all indebtedness on said [residence], and pay all expenses connected thereto and hold the defendant harmless therefrom." Further, the court awarded no alimony to either party and stated that "[t]he defendant shall retain his life insurance and his pensions, which the court finds to be a premarital asset, free of any claim from the plaintiff."

On January 4, 2006, the defendant, pursuant to Practice Book § 11-11, filed a motion to reargue, which the court denied with respect to the issues on appeal.[1] The defendant filed the present appeal on March 27, 2006. On May 22, 2006, the defendant moved for an articulation of the court's decision, which was denied on June 9, 2006.[2] Additional facts will be set forth as necessary.

As a preliminary matter, we set forth the standard of review and legal principles applicable to the defendant's claims on appeal. "In fashioning its financial orders, the court has broad discretion, and [j]udicial review of a trial court's exercise of [this] broad discretion . . . is limited to the questions of whether the . . . court correctly applied the law and could reasonably have concluded as it did. . . . In making those determinations, we allow every reasonable presumption . . . in favor of the correctness of [the trial court's] action. . . . That standard of review reflects the sound policy that the trial court has the unique opportunity to view the parties and their testimony, and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, including such factors as the demeanor and the attitude of the parties." (Internal quotation marks omitted.) *Sander* v. *Sander*, 96 Conn. App. 102, 105, 899 A.2d 670 (2006); see also *Purnell* v. *Purnell*, 95 Conn. App. 677, 685, 897 A.2d 717, cert. denied, 280 Conn. 903, 907 A.2d 91 (2006).

"In distributing the assets of the marital estate, the court is required by [General Statutes] § 46b-81 to consider the estate of each of the parties. . . . General Statutes § 46b-81 (a) provides in relevant part: At the time of entering a decree . . . dissolving a marriage

---

[1] The court granted the motion with respect to the issue of the division of personal property, which the court referred to arbitration.

[2] The defendant did not seek review of the denial of his motion for articulation.

. . . the Superior Court may assign to either the husband or wife all or any part of the estate of the other. . . . Courts are not required to ritualistically recite the criteria they considered, nor are they bound to any specific formula respecting the weight to be accorded each factor in determining the distribution of marital assets." (Citation omitted; internal quotation marks omitted.) *Mann* v. *Miller*, 93 Conn. App. 809, 812, 890 A.2d 581 (2006); *Raso* v. *Raso*, 92 Conn. App. 678, 681, 886 A.2d 863 (2005).

Last, we recite our standard with respect to the court's factual findings. "Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Gervais* v. *Gervais*, 91 Conn. App. 840, 844, 882 A.2d 731, cert. denied, 276 Conn. 919, 888 A.2d 88 (2005); *Chyung* v. *Chyung*, 86 Conn. App. 665, 667–68, 862 A.2d 374 (2004), cert. denied, 273 Conn. 904, 868 A.2d 744 (2005). Guided by these principles, we address each of the defendant's claims presented on appeal.

I

The defendant first claims that the court abused its discretion by awarding the plaintiff 100 percent of the equity in the residence. Specifically, he argues that it was improper for the court to offset his pensions, a premarital asset, against all of the equity in the residence, a marital asset, which was awarded to the plaintiff. We are not persuaded.

As we previously noted, among other orders, the court awarded the plaintiff the residence and the defendant his pensions. Pension benefits constitute a form of deferred compensation for services rendered. *Thompson* v. *Thompson*, 183 Conn. 96, 100, 438 A.2d 839 (1981). "Pension benefits are widely recognized as among the most valuable assets that parties have when a marriage ends." (Internal quotation marks omitted.) *Ricciuti* v. *Ricciuti*, 74 Conn. App. 120, 124, 810 A.2d 818 (2002), cert. denied, 262 Conn. 946, 815 A.2d 676 (2003); *Stamp* v. *Visconti*, 51 Conn. App. 84, 86, 719 A.2d 1223 (1998). Nevertheless, there is no set formula that a court must follow when dividing the parties' assets, including pension benefits. *Casey* v. *Casey*, 82 Conn. App. 378, 386–87, 844 A.2d 250 (2004).

Our Supreme Court has stated that "the purpose of property division is to unscramble the ownership of property, giving to each spouse what is equitably his [or hers]. . . . The bare legal title to property acquired or accumulated by the spouses during marriage often does not correspond to their real rights in such property. H. Clark, Law of Domestic Relations (1968) § 14.8, p. 450." (Citation omitted; internal quotation marks omitted.) *Watson* v. *Watson*, 221 Conn. 698, 711, 607 A.2d 383 (1992); see also A. Rutkin & K. Hogan, 7 Connecticut Practice Series: Family Law and Practice (1999) § 26.3, p. 472 ("[g]iven the broad scope of the Connecticut equitable distribution statute, attorneys are spared the effort or need to distinguish between 'marital' and 'non-marital' assets"). This process is not bound by a well defined blueprint but, rather, is molded to the needs of justice. See *Lawler* v. *Lawler*, 16 Conn. App. 193, 204, 547 A.2d 89 (1988), appeal dismissed, 212 Conn. 117, 561 A.2d 128 (1989).

"The distribution of assets in a dissolution action is governed by § 46b-81, which provides in pertinent part that *a trial court may assign to either the husband or*

*the wife all or any part of the estate of the other.* . . . In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party . . . shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates. . . . *This approach to property division is commonly referred to as an all-property equitable distribution scheme.* See 3 Family Law and Practice (A. Rutkin ed., 1995) § 37.01 [2] [a] [v], p. 37-19. *[Section 46b-81] does not limit, either by timing or method of acquisition or by source of funds, the property subject to a trial court's broad allocative power.* A. Rutkin, E. Effron & K. Hogan, 7 Connecticut Practice Series: Family Law and Practice with Forms (1991) § 27.1, pp. 398–400." (Emphasis added; internal quotation marks omitted.) *Bender* v. *Bender*, 258 Conn. 733, 741–42, 785 A.2d 197 (2001); see also *North* v. *North*, 183 Conn. 35, 38–40, 438 A.2d 807 (1981); *Karen* v. *Parciak-Karen*, 40 Conn. App. 697, 702, 673 A.2d 581 (1996); *Tyc* v. *Tyc*, 40 Conn. App. 562, 565–66, 672 A.2d 526, cert. denied, 237 Conn. 916, 676 A.2d 398 (1996).

### A

The defendant first contends that it was improper for the court to consider his pensions when distributing the property because he had acquired the right to them prior to the marriage. This contention is without merit. As we have noted, a court's power to allocate property is not limited by timing or method of acquisition. See, e.g., A. Rutkin & K. Hogan, 7 Connecticut Practice Series: Family Law and Practice (1999) § 26.1, p. 470

("The Connecticut statute is also unlike the provisions in effect in many other jurisdictions in that it does not limit distribution to property acquired during a particular period of time. For example, the statute does not limit distribution to items which were acquired after the date of the marriage, prior to the commencement of the action, or prior to the separation of the parties."). Moreover, our Supreme Court expressly has stated that the trial court has the authority to distribute individually held property as well as jointly held property. *Lopiano* v. *Lopiano*, 247 Conn. 356, 370, 752 A.2d 1000 (1998). "Although it is not improper for the trial court to consider the actual source or ownership of an asset, these are but two factors to be considered in reaching an equitable division in dissolution proceedings. The fact that a particular asset belongs to one spouse may cause the trial court to be predisposed to awarding it to its owner; however, if the marital estate is otherwise insufficient to maintain the other spouse, the court must be able to exercise its discretion in arriving at an equitable distribution, taking into consideration the needs and assets of both parties. The failure to interpret property broadly pursuant to § 46b-81 could result in substantial inequity where, for example, a spouse who recovers a substantial amount in a personal injury action is left with income-producing assets, bought solely with money from the award, and the uninjured spouse is left destitute. Such a result clearly would be contrary to the purposes of § 46b-81 and would not be in keeping with the equitable nature of dissolution proceedings under that section." Id., 370–71. We conclude, therefore, that the court properly considered the defendant's pensions when it crafted the financial orders.

B

The defendant also argues that the court improperly found that his pensions had appreciated during the

course of the marriage. The court stated that the defendant's pensions "increase by 3 [percent] each year" and that the present value of the pensions was $363,000. We conclude that the court's finding was not clearly erroneous.

The following additional facts are necessary for our discussion. The parties stipulated to the value of the defendant's pensions rather than present expert testimony. The following colloquy then transpired:

"The Court: You are telling me it makes no difference what the value of the pension was at the time of the marriage because prior to that it would be his?

"[The Defendant's Counsel]: My position for the court is [that] it makes no difference what the value is now either because it is a premarital asset—

"The Court: All I will deal with is the $363,000?

"[The Defendant's Counsel]: That is the present value as of today.

"The Court: All right."

Despite this apparent agreement, counsel for the defendant later indicated that he was unsure whether the annual 3 percent cost of living increases applied to the original value of the pensions or to what was remaining in the pensions. Nevertheless, the parties subsequently submitted a joint exhibit indicating that the defendant is entitled to an annual 3 percent cost of living adjustment, which, over the course of an eighteen year marriage, resulted in a 54 percent increase in monthly payments.

On the basis of these facts, we cannot say that the court's finding that the defendant's pensions increases by 3 percent each year was clearly erroneous. The amount received by the defendant from his pensions in fact does increase by 3 percent on an annual basis.

The defendant speculates that the court's statement means that the actual value of the pensions increases. We do not agree with this speculation.[3] In the sentence immediately preceding the discussion of the annual increase of his payments from the pensions, the court noted that "[a]fter his marriage is terminated, [the defendant] will lose about $300 per month in benefits." Reading the two sentences together, it is apparent that the court was referring to the 3 percent increase in payments to the defendant and not a 3 percent increase in the total value of the pensions. We conclude, therefore, that the court's finding regarding the cost of living adjustment to the defendant's pensions was not clearly erroneous.

C

The defendant next argues that the court reasonably could not have concluded that awarding him his pensions was an offset against the value of the residence. Specifically, he maintains that the court failed to abide by its statutory obligation to consider the "contribution of each party in the acquisition, preservation or appreciation in value" of an asset, as set forth in § 46b-81. We do not agree.

The court stated that it considered "the pertinent statutes, the requests of the parties and the financial

---

[3] We also note that the defendant failed to seek an articulation of the court's decision with respect to the issue of the cost of living adjustments to his pension. "It is well settled that [a]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . An articulation may be necessary where the trial court fails completely to state any basis for its decision . . . or where the basis, although stated, is unclear. . . . The purpose of an articulation is to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal." (Citations omitted; internal quotation marks omitted.) *Fantasia* v. *Milford Fastening System*, 86 Conn. App. 270, 283, 860 A.2d 779 (2004), cert. denied, 272 Conn. 919, 866 A.2d 1286 (2005); see also *Premier Capital, Inc.* v. *Grossman*, 92 Conn. App. 652, 660 n.1, 887 A.2d 887 (2005).

conditions of the parties, their respective ages, their income streams and ability to earn income, etc. . . ."[4] The court further indicated that if it were to award the plaintiff alimony, it then would award the defendant a portion of the residence. The court ultimately decided, however, to forgo an alimony award in favor of awarding the plaintiff the residence and the defendant his pensions.

"In fashioning its financial orders, the court has broad discretion, and [j]udicial review of a trial court's exercise of [this] broad discretion . . . is limited to the questions of whether the . . . court correctly applied the law and could reasonably have concluded as it did. . . . In making those determinations, we allow every reasonable presumption . . . in favor of the correctness of [the trial court's] action. . . . That standard of review reflects the sound policy that the trial court has the unique opportunity to view the parties and their testimony, and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, including such factors as the demeanor and the attitude of the parties." (Internal quotation marks omitted.) *Farrell-Williams* v. *Williams*, 99 Conn. App. 453, 455, 913 A.2d 1136 (2007).

The court awarded the defendant his entire pensions, providing him with an undivided monthly stream of income. The court then balanced the financial interests of the plaintiff by awarding her the total interest in the residence, which was subject to a mortgage. In reviewing the court's actions, we are limited by our standard of review and do not contemplate whether we would reach the same result. Instead, we limit our review to whether the court correctly applied the law

---

[4] We are entitled to presume that the court acted properly and considered all of the evidence before it. *Misinonile* v. *Misinonile*, 35 Conn. App. 228, 234, 645 A.2d 1024, cert. denied, 231 Conn. 929, 649 A.2d 253 (1994); *Rummel* v. *Rummel*, 33 Conn. App. 214, 222, 635 A.2d 295 (1993).

and reasonably could have awarded the defendant his pensions and the plaintiff the residence. Mindful of this deferential standard, after reviewing the entire record, we conclude that the court's financial orders did not constitute an abuse of discretion. In other words, the defendant failed to carry his burden that the court did not consider the proper criteria. See *Rummel* v. *Rummel*, 33 Conn. App. 214, 222–23, 635 A.2d 295 (1993).

## II

The defendant next claims that the court abused its discretion by awarding the plaintiff 100 percent of the equity in the residence as an offset against an award of alimony on the basis of an erroneous finding regarding the termination of the plaintiff's employment. Specifically, he argues that the court erroneously found that the plaintiff had been discharged from her employment in a restaurant two years prior to the trial. We agree that the court's finding was clearly erroneous. Nevertheless, we conclude that this erroneous finding constituted harmless error.

The following additional facts are necessary for our discussion. The plaintiff testified that she had been employed at several different restaurants. She then indicated that she had been laid off by her employer on November 18, 2005, twelve days before the trial. In its memorandum of decision, however, the court stated: "[The plaintiff's] last employment was as a waitress at Marianni's Restaurant. This ended about two years ago when she was laid off."[5]

---

[5] The defendant also argues that the court improperly found that the plaintiff most recently had been employed as a restaurant manager and therefore had a higher earning capacity than a waitress. We note that the court was in possession of the plaintiff's most recent financial affidavit, listing her income, and the defendant has not challenged the veracity of that evidence. The defendant, moreover, failed to present any evidence regarding the amount of income earned by the plaintiff as a manager as compared with that of a waitress. "As [our Supreme Court has] observed, [i]t is the function of the trial court, not [an appellate] court, to find facts. . . . [T]o review [a] claim, which has been articulated for the first time on

As we previously stated, a finding of fact is clearly erroneous when there is no evidence in the record to support it. See *Gervais* v. *Gervais*, supra, 91 Conn. App. 844. We have reviewed the entire record and conclude that there is no evidence to support the finding that the plaintiff's employment was terminated two years prior to the trial. We agree, therefore, that this finding is clearly erroneous.

Although one of the court's findings was clearly erroneous, it does not follow a fortiori that the court's financial orders constituted an abuse of discretion. "Where, however, some of the facts found [by the trial court] are clearly erroneous and others are supported by the evidence, we must examine the clearly erroneous findings to see whether they were harmless, not only in isolation, but also taken as a whole." (Internal quotation marks omitted.) *Grimm* v. *Grimm*, 82 Conn. App. 41, 48, 844 A.2d 855 (2004), rev'd in part on other grounds, 276 Conn. 377, 886 A.2d 391 (2005), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006); *Owens* v. *New Britain General Hospital*, 32 Conn. App. 56, 78, 627 A.2d 1373 (1993), aff'd, 229 Conn. 592, 643 A.2d 233 (1994); *DiNapoli* v. *Doudera*, 28 Conn. App. 108, 112, 609 A.2d 1061 (1992); see *O'Bymachow* v. *O'Bymachow*, 12 Conn. App. 113, 117, 529 A.2d 747, cert. denied, 205 Conn. 808, 532 A.2d 76 (1987).

In the present case, the court considered the respective age and health of the parties. The court noted that the plaintiff lacked any sort of pension benefits and that her only present income was approximately $300 per week from social security, while the defendant received more than $2100 per month. The plaintiff sold

appeal and not before the trial court, would result in a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) *Seymour* v. *Region One Board of Education*, 274 Conn. 92, 105, 874 A.2d 742, cert. denied, 546 U.S. 1016, 126 S. Ct. 659, 163 L. Ed. 2d 526 (2005).

property that she had owned prior to the marriage[6] and used the proceeds to purchase a house in Florida in which both parties had lived. After moving to Connecticut, both parties contributed to the residence until the defendant moved out in December, 2003. After that time, the defendant did not assist the plaintiff financially in any way, leaving her to pay the mortgage, her living expenses and the expenses associated with ownership of the residence. After considering the statutory factors, the court, in an effort to untangle the parties' finances, ordered that the defendant quitclaim his interest in the residence to the plaintiff and that the plaintiff solely be responsible for its expenses. Neither party was awarded alimony. The plaintiff was given one motor vehicle, while the defendant received three. The plaintiff was required to give the defendant a painting valued at $12,000. The parties were ordered to pay their own attorney's fees, to provide their own medical insurance coverage and to pay their joint debts equally. Finally, the court awarded the defendant, free from any claim by the plaintiff, his life insurance and pensions.

Despite the court's erroneous finding regarding the timing of the termination of the plaintiff's employment, after reviewing the entire record before us, we cannot say that the court's financial awards constituted an abuse of discretion. The court considered the relevant statutory criteria and applied its broad allocative

---

[6] The defendant argues that the court failed to find that the proceeds from these sales were in Canadian dollars, which "are worth significantly less than American dollars, given the exchange rate." The defendant, however, failed to present any evidence to the trial court regarding the exchange rate between United States and Canadian dollars during the relevant time period. We therefore decline to consider this claim. "We have repeatedly held that this court will not consider claimed errors on the part of the trial court unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim." (Internal quotation marks omitted.) *Urich* v. *Fish*, 97 Conn. App. 797, 801, 907 A.2d 96 (2006).

authority to distribute the property equitably between the parties. "An equitable award does not require that the marital estate be divided equally." (Internal quotation marks omitted.) *Wendt* v. *Wendt*, 59 Conn. App. 656, 684, 757 A.2d 1225, cert. denied, 255 Conn. 918, 763 A.2d 1044 (2000); see also *Purnell* v. *Purnell*, supra, 95 Conn. App. 681. In allowing for every reasonable presumption in favor of the correctness of the court's actions, we cannot conclude that the court abused its discretion with respect to its property distribution between the parties in the present case.

## III

The defendant next claims that the court abused its discretion by valuing the residence as of the date of the parties' separation instead of the date of dissolution. Although it is difficult to discern from his brief, the defendant appears to argue that the court improperly awarded the plaintiff all of the appreciated value of the residence from the time of the separation.[7] We disagree.

---

[7] To the extent that the defendant challenges the valuation of the residence, we decline to review that claim. The parties stipulated that the value of the residence at the time of trial in 2005 was $272,500, subject to a mortgage of $99,723.77. The court accepted the parties' stipulation. "Ordinarily . . . stipulations of the parties should be adopted by the court. *Central Coat, Apron & Linen Service, Inc.* v. *Indemnity Ins. Co.*, 136 Conn. 234, 236, 70 A.2d 126 (1949)." *Central Connecticut Teachers Federal Credit Union* v. *Grant*, 27 Conn. App. 435, 438, 606 A.2d 729 (1992); see also *State* v. *Phidd*, 42 Conn. App. 17, 31, 681 A.2d 310 (formal stipulation of facts by parties constitutes judicial admission that should normally be adopted by court deciding case), cert. denied, 238 Conn. 907, 679 A.2d 2 (1996), cert. denied, 520 U.S. 1108, 117 S. Ct. 1115, 137 L. Ed. 2d 315 (1997).

Because the defendant stipulated to the value of the residence before the trial court, he cannot now challenge that finding by the court. "This situation is in the nature of induced error. Actions that are induced by a party ordinarily cannot be grounds for error [on appeal]." (Internal quotation marks omitted.) *Sachs* v. *Sachs*, 60 Conn. App. 337, 345, 759 A.2d 510 (2000).

Additionally, we note that the court did not value the residence at the time of separation, in 2003. The court expressly stated that it accepted the parties' stipulation that the value of the residence at the time of the trial was $272,500 with equity in the amount of $172,777.

As a general rule, "§ 46b-81 indicates that it is the date of dissolution, rather than the date of separation, on which the [parties'] marital assets are to be determined." (Internal quotation marks omitted.) *Kiniry* v. *Kiniry*, 71 Conn. App. 614, 624–25, 803 A.2d 352 (2002), aff'd, 79 Conn. App. 378, 830 A.2d 364 (2003); *Benedetto* v. *Benedetto*, 55 Conn. App. 350, 356, 738 A.2d 745 (1999), cert. denied, 252 Conn. 917, 744 A.2d 437 (2000). In *Wendt* v. *Wendt*, supra, 59 Conn. App. 656, this court stated that valuation as of the date of dissolution "is simply part of the broader principle that the financial awards in a marital dissolution case should be based on the parties' current financial circumstances to the extent reasonably possible." (Internal quotation marks omitted.) Id., 661–62. Nevertheless, "[t]he principle that requires the court to value assets as of the date of dissolution does not absolutely preclude the court from considering the significance of the date of separation. . . . [T]he date of separation may be of significance in determining what is equitable at the time of distribution. In distributing property . . . the court is instructed to consider the contribution of each spouse in the acquisition, preservation and appreciation of the marital estate. After the date of separation, it is not difficult to conceive that one spouse may acquire a particular asset without any contribution from the other spouse." (Internal quotation marks omitted.) Id., 663–64.

The defendant argues that the plaintiff was earning more income in December, 2003, and January, 2004, the time at which he left the residence. As a result of that factor, combined with his age, he maintains that it was equitable to expect the plaintiff to pay the expenses associated with the residence, including the mortgage, while he paid for his own living expenses. The court, however, found that the defendant, after separating from the plaintiff and moving out in December, 2003, ceased paying any of the expenses associated with the

residence. Moreover, it heard evidence that the defendant's total income, including his pensions and social security payments, actually was greater than the plaintiff's. Further, during the two year period after the parties separated until the trial, the plaintiff alone maintained the residence, while the defendant purchased various motor vehicles. The court then determined it equitable to award the plaintiff all of the appreciation in the residence. On the basis of the entire record before us, we cannot conclude that this determination constituted an abuse of discretion.

## IV

The defendant's final claim is that the court abused its discretion by valuing the residence without any appraisal or expert testimony. Specifically, the defendant argues in his brief that the "only evidence regarding the value of the residence in 2003 was the self-serving testimony of the [p]laintiff. Pursuant to Connecticut Practice Book § 25-33, the trial court has the authority [to] appoint an expert to value an asset, should the trial court deem it necessary." The defendant concludes that such a valuation was necessary in the present case.

The defendant has provided no citation or legal authority in support of this claim. It is well established that "[w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failing to brief the issue properly. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Internal quotation marks omitted.) *Wilson* v. *Jefferson*, 98 Conn. App. 147, 166, 908 A.2d 13 (2006); *Sander* v. *Sander*, supra, 96 Conn. App. 114. Accordingly, we

decline to review this claim on the basis of an inadequate brief.[8]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[8] Even if we were to review this claim, we would conclude that it is without merit. As the plaintiff noted in her brief, homeowners are permitted to testify concerning their opinion as to the fair market value of the property. *Gregorio* v. *Naugatuck*, 89 Conn. App. 147, 156, 871 A.2d 1087 (2005); see also *Pestey* v. *Cushman*, 259 Conn. 345, 364, 788 A.2d 496 (2002) ("[t]his rule reflects . . . the common experience that an owner is familiar with her property and knows what it is worth" [internal quotation marks omitted]); *Tessmann* v. *Tiger Lee Construction Co.*, 228 Conn. 42, 47, 634 A.2d 870 (1993); *McCahill* v. *Town & Country Associates, Ltd.*, 185 Conn. 37, 41, 440 A.2d 801 (1981). The court, therefore, was free to accept the plaintiff's testimony regarding the value of the residence.